UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

PINE BLUFF DIVISION

| | | |
|---|---|---|
| SIEMENS INDUSTRY, INC. | * | CIVIL ACTION |
| | * | |
| Plaintiff | * | NO: 5:15-CV-00127 DPM-JTK |
| | * | |
| VERSUS | * | JUDGE MARSHALL |
| | * | |
| CITY OF MONTICELLO, ARKANSAS | * | MAGISTRATE KEARNEY |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff and Counterclaim-Respondent, Siemens Industry, Inc. ("Siemens Industry"), submits this brief in support of its Motion for Summary Judgment. This case arises from a Performance Contracting Agreement (the "Contract") between Siemens Industry and the City of Monticello (the "City") to replace the City's water meters and some of its water lines. In Count II of its Counterclaim, the City alleges that the Contract is unenforceable because Siemens Industry lacked proper licensure from the State of Arkansas. For the reasons explained below—not the least of which that Siemens Industry indeed possesses an appropriate Arkansas license—Siemens Industry is entitled to judgment as a matter of law.

**Background**

Under the Contract, Siemens Industry agreed to perform construction work and also guarantees the City that its improvements will increase revenue and reduce expenses enough to pay for the cost of replacing the meters and water lines. Siemens Industry has already replaced more than 4,300 of the City's water meters pursuant to the Contract. The City has paid Siemens

Industry $6,724,912.93 pursuant to the Contract. *See* R. Doc. 12 at 16 ¶ 32. But it has prevented Siemens Industry from completing its work. Siemens Industry filed this lawsuit seeking to complete its performance of the Contract. *See* R. Docs. 1, 7. The following material facts to this motion are not in dispute.

**I.     After Reviewing Siemens Industry's Contractor's License, the City Hired Siemens To Replace The City's Water Meters.**

Following an open, competitive procurement process (Request for Qualifications) in accordance with Arkansas law, the City in 2012 selected Siemens Industry as its contractor. *See* R. Doc. 12 at 3, 10 ¶¶7, 11; R. Doc. 1 at 5-205. Siemens Industry supplied the City with copies of its Arkansas "Building" contractor's license when it responded to the RFQ. *See* R. Doc. 17-2 at 139-140. The City raised no objection to the adequacy of Siemens Industry's licensure, and the parties executed the Contract in September 2013. Siemens Industry subsequently installed more than 4,300 water meters in 2014. *See* R. Doc. 12 at 17 ¶ 37. In Count II of the Counterclaim, filed in May 2015, Plaintiff for the first time notified Siemens Industry that it challenged whether Siemens Industry had the necessary State license to perform this work. *See* R. Doc. 12 at 12-13 ¶¶ 15-20.

**II.    Siemens Industry And Its Subcontractor Hold Valid Arkansas Contractors' Licenses.**

Siemens Industry obtained an Arkansas contractor's license with a "Building" classification in 2011 with an unlimited bid amount and renewed it each year to the present year. *See* Siemens Industry Licenses (attached herein as Ex. 1). To perform the water meter replacement in the Performance Contracting Agreement, Siemens Industry hired X-Tra Light Manufacturing Partnership, Ltd. ("X-Tra Light") as its subcontractor. *See* X-Tra Light Sub-Contract (attached herein as Ex. 2). In 2009, X-Tra Light obtained an Arkansas contractor's

license, which entitled it to practice contracting in Arkansas in the following areas: "Building," "Electrical," and "Specialty" (including Energy Management-Retrofit Systems, Grading-Drainage, Plumbing, and Underground Piping, Cable, Trenching, Boring and has renewed it each year). *See* X-Tra Light Licenses (attached herein as Ex. 3).[1]

### III. Siemens Industry Is Ready and Willing To Continue Its Performance As Recently Requested By The City.

Siemens Industry is ready and willing to perform the remainder of the Contract as reflected in its Complaint seeking specific performance. The City has repeatedly recently demanded Siemens Industry to continue to perform obligations under the Performance Contracting Agreement. *See* E-mails (attached herein as Ex. 5).

### Summary of Argument

The Court should enter Summary Judgment dismissing Count II of the Counterclaim. Siemens Industry did not violate the Contractors Licensing Act. At all pertinent times, Siemens Industry held an Arkansas license as a "Building" Contractor. Siemens Industry also had subcontractors who were properly licensed to perform the work. Moreover, the applicable statute and regulations are at best vague and, as such, must be construed to avoid finding a violation of the Contractors Licensing Act.

Alternatively, to the extent Siemens Industry would be found "in violation" of the Contractors Licensing Act and subject to the effects Ark. Code Ann. § 17-25-103(d), the parties have an unenforceable contract that continues to be valid and binding. Summary Judgment dismissing the entire action is merited because no action to enforce any provision of the Contract may be brought in law or in equity by the parties to the Contract, because the parties were

---

[1] Siemens Industry also had Avis Construction, Inc. ("Avis") lined up to perform the water line replacement. Avis obtained an Arkansas contractor's license which included "Underground Piping, Cable, Trenching, Boring, Water and Sewer Lines, Grading, Drainage, Base, Paving. See Avis License (attached herein as Ex. 4).

equally at fault in interpreting the Contract, and because Siemens Industry is ready and willing to continue to perform the remainder of the Contract as recently requested by the City.

### Legal Standard

Under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party may move for summary judgment on "part of [a] claim or defense." *Id*. The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Once the movant has met that burden," the non-moving party "must designate specific facts showing that a genuine dispute about a material issue remains for trial." *See Reed v. Woodruff Cnty., Ark.*, 7 F.3d 808, 810 (8th Cir. 1993).

### Argument

**I.  Siemens Industry Is Entitled To Summary Judgment Because It Did Not Violate The Contractors Licensing Act.**

Some contractor licensing cases involve work performed by "rogue" contractors with no license whatsoever. This case is not one of those. Siemens Industry has always held a license. The City's argument, instead, is that when Siemens Industry solicited the contract to install water meters and when it installed them, it (and its subcontractor) lacked a license for the specific regulatory classification of "Municipal and Utility Construction." *See* R. Doc. 12 at 12 ¶ 16. As discussed below, the applicable statute and regulations do not support the City's argument. Indeed, the regulations contradict the City on this.

A.     **The Licenses Held By Siemens Industry And Its Subcontractor Permitted Them To Replace The City's Water Meters.**

Arkansas statute establishes a Contractors Licensing Board ("the Board") and authorizes the Board to set regulations for licensing of construction contractors.[2] The Regulations identify seven separate classifications of contractor licensees (e.g., "heavy construction" or "building"). Within each classification, the Regulations identify "specialty classes" such as "Tower and Stack Construction" and "Erosion Control." A licensee within a classification "is authorized to perform any of the 'specialties' associated with the classification in question." Ark. Admin. Code 033.00.1-224-25-5(a).

The Regulations expressly authorize licensees to work across classifications and subclassifications, so long as the licensee ensures the public interest is protected:

> The listing of any classification or sub-classification on a license certificate authorizes the performance of work falling within that field or of any field so closely related that the skill required for the specified field would also apply. It is not intended for these classifications to be restrictive beyond the point of safeguarding the public interest in requiring Contractors to supply the skills necessary to perform the work under contract.

Ark. Admin. Code 033.00.1-224-25-7(d).

Siemens Industry holds a license in the "Building" classification. Such a licensee may "enter into general contracts for building construction, including all specialty items required in the contract to make the building usable for the purpose intended and may perform these items with his own forces, if qualified, or may sublet such work to qualified specialty subcontractors." Ark. Admin. Code 033.00.1-224-25-7(e). A contractor with this classification may seemingly

---

[2] For the Court's ease of reference, we attach a copy of the Regulations (attached hereto as Ex. 6).

build entire skyscrapers from underground, whether with its own resources or through licensed subcontractors. *See* Ark. Admin. Code 033.00.1-224-25-5, 033.00.1-224-25-7(c)-(d).

The Building classification includes the Specialty class of "Grading and Drainage," which includes "Grading, Drainage, Pipe & Structures…" Ark. Admin. Code 033.00.1-224-25-5. This is significant in that the "Municipal and Utilities" classification, which the City insists Siemens Industry needs here, contains the same "Pipe & Structures" subspecialty as the "Building" classifications. The Regulations do not define either subspecialty. Thus, the City asks the Court to engraft a distinction that simply does not exist in the Regulations: a distinction between "Municipal and Utilities" classification's "Pipe and Structures" subspecialty and "Building" classifications "Pipe and Structures" subspecialty. Neither the text of the Regulations nor common sense supports such a conclusion. The State granted Siemens Industry a license to provide "Pipe and Structures" as a subspecialty of its "Building" license. In the absence of any textual support, the City cannot explain why that authorization does not suffice for the work contemplated by the Contract.

The City also asserts that only a contractor "licensed in the sub-classification specialty of Meter Installation and Service" qualifies. This conclusion is hardly evident. The Regulations do not define "Meter Installation and Service," let alone distinguish among water, electrical and air flow meters, any of which may be part of a construction project, and which may involve differing skills to properly install. Moreover, the City cannot explain why this work is not "closely related" to Pipe and Structures work, thereby meeting the pragmatic, non-restrictive principles of Ark. Admin. Code 033.00.1-224-25-7(d).

The City's argument requires the Court to disregard the positive text of the statute and Regulations, which appear to grant fairly expansive authority, in favor of highly restrictive

6

definitions that the City, alone, has decided must apply. The City's argument, in short, impermissibly imposes regulatory burdens far greater than necessary to safeguard "the public interest in requiring Contractors to supply the skills necessary to perform the work under contract." *See* Ark. Admin. Code 033.00.1-224-25-5(d).

The Court should decline to adopt such a burdensome interpretation of the Contractors Licensing Act and accept the practical one proposed by Siemens Industry. Siemens Industry held licenses that permitted it to perform the work in the Contract, so it is entitled to summary judgment on Count II of the City's Counterclaim.

B.  **To the Extent the Regulations Are Ambiguous, They Must Be Interpreted to Avoid Finding a Violation.**

In Count II of the Counterclaim, the City cites the Contractors Licensing Act to support its argument. The statute provides in part:

> No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this chapter. No action may be brought either at law or in equity for quantum meruit by any contractor in violation of this chapter.

Ark. Code Ann. § 17-25-103(d).

To prevail on Count II of its counterclaim, the City must prove that there was a "violation" of the Contractors Licensing Act. This conclusion does not follow even if the Court were to accept the City's argument that Siemens Industry required a different type of license.[3] Although the statute requires "a license with the proper classification to engage in the business of contracting in this state," *see* Ark. Code 17-25-103(a)(1)(A), it does not expressly state that performing work outside of the classification results in a violation. The Regulations are similarly equivocal. Section 5(i) is permissive, stating only that "[p]erforming work not listed

---

[3] Of course, Siemens Industry disputes the City's argument.

under that classification *may* constitute a violation." *See* Code Ark. R. 033.00.1-224-25-5(i) (emphasis added).

"Code provisions imposing penalties for noncompliance with licensing requirements," including the above statute, "must be strictly construed." *See Wilcox v. Safley*, 766 S.W. 2d 12, 13 (Ark. 1989). "Accordingly, if the language of such provisions is not clear and positive, or if it is reasonably open to different interpretations, every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied." *Id*. (refusing to find a violation of the Contractor's Licensing Act where statute was vague).

Although Siemens Industry asserts that the statute and regulations plainly authorize it to perform the work contemplated by the Contract, the City's contrary assertion at most raises the question whether the statute and regulations are ambiguous or vague. Even if the Court were to agree with the City on that issue, the *Wilcox* holding mandates that the Court resolve any doubts against the finding of a violation and decline to impose the penalty in Ark. Code Ann. § 17-25-103(d). As a result, the Court should grant partial summary judgment and dismiss Count II of the City's Counterclaim.

## II.   Alternatively, Siemens Industry Is Entitled To Summary Judgment Dismissing All Claims.

Alternatively, to the extent Siemens Industry would be found in "violation" of the Contractors Licensing Act, Siemens Industry remains entitled to Summary Judgment dismissing the entire action. If a violation has occurred, then both Siemens Industry's and the City's claims are equally subject to the penalty provision which Ark. Code. § 17-25-103(d) provides as follows:

> *No action* may be brought either at *law* or in *equity* to enforce any provision of any contract entered into in violation of this chapter. No action may be brought

either at law or in equity for quantum meruit by any contractor in violation of this chapter.

Ark. Code Ann. § 17-25-103(d). (Emphasis added). As a result, all claims must be dismissed.

A. **Ark. Code Ann. § 17-25-103(d) Makes A Contract In Violation Of The Contractors Licensing Act Unenforceable As To All Parties, But The Contract Continues To Be Valid And Binding.**

Plaintiff asserts Ark. Code Ann. §17-25-103(d) as a basis for recovering the amount it has paid on the contract. However, this section makes any provision of any contract entered into in violation of the Contractors Licensing Act "unenforceable." *See Ottinger v. Blackwell*, 173 F. Supp. 817, 821 (E.D. Ark. 1959). As a result, any action seeking to enforce the provision "cannot be maintained [by] the court." *Id*. However, Ark. Code Ann. § 17-25-103(d) goes "solely to the remedy of the parties and not to the inherent validity of the contract itself." *Id*. It does not render a contract "illegal or void." *See Quality Fixtures, Inc. v. Multi-Purpose Facilities Bd. for Pulaski Cnty*., 986 S.W. 2d 865, 867 (Ark. 1999) (adopting reasoning in *Ottinger*). Therefore, a contract subject to Ark. Code § 17-25-103(d) is unenforceable at law or in equity, but it remains valid and binding under Arkansas law. This consequence applies equally to both the contractor and the contractor's client because Ark. Code Ann. § 17-25-103(d) states that *"[n]o action* may be brought *at law* or *in equity*" to enforce the contract. *See supra* (emphasis added).[4]

This interpretation is consistent with the core purpose of the Contractors Licensing Act, which is to protect consumers and the general public from the risks associated with construction performed by unqualified or incompetent contractors. *See* Code Ark. R. 033.00.1-224-25-7(d); *Ottinger*, 173 F. Supp. at 821. If an unlicensed contractor's client could compel performance of

---

[4] In dicta, the *Ottinger* court suggested that the contractor's client might be able to enforce a contract subject to the penalty in § 17-25-103(d). *Ottinger*, 173 F. Supp. at 821. But this dicta contradicts the clear language in the penalty provision, which does not limit its prohibition to any particular party to the contract.

a contract "in violation of" the Contractors Licensing Act, it would circumvent the overriding goal of the statute. Also, allowing an unlicensed contractor's client to enforce a contract in law or in equity would lead to the absurd result of a court compelling a contractor to subject himself to the fines and other penalties in Ark. Code Ann. § 17-25-103. In sum, the language of the Contractors Licensing Act and its core purpose indicate that no party may bring any action in law or in equity on a contract entered in violation of the Contractors Licensing Act. Applied to this case, the City may assert the Contractors Licensing Act as a potential defense to a breach of contract claim, but it may not simultaneously use it as a sword to recover in law or in equity.

**B.      The City Is Not Entitled To Return Of Money Paid On An Allegedly Unenforceable But Valid Contract In This Case.**

Siemens Industry contends that it complied with the Contractors Licensing Act. But regardless of its compliance, the City has no right to recover money paid on the contract under Ark. Code Ann. § 17-25-103(d). Even if this section applies to the Contract—which Siemens Industry disputes—the City has no right to the relief it seeks based on the doctrine of pari delicto and the fact that Siemens Industry is willing to continue to perform.

**1.      The Court Must Leave The Parties Where It Finds Them Because They Were Equally At Fault.**

"Arkansas has recognized and applied the doctrine of in pari delicto when parties to an illegal contract are equally culpable." *Wal-Mart Stores, Inc. v. Crist*, 855 F.2d 1326, 1334 (8th Cir. 1988).[5] Under the doctrine, "neither courts of law nor of equity will interpose to grant any relief to the parties, but will leave them where it finds them." *See Womack v. Maner*, 301 S.W. 2d 438, 439 (Ark. 1957). "The rule applies with equal force where the contract has been

---

[5] As it relates to contracts, the use of the term "illegal" is virtually synonymous with the term "unenforceable" which the Restatement of Contracts adopts. *See* Restatement (Second) of Contracts § 8 (1981).

executed in whole or in part." *Crist*, 855 F.2d at 1335 (applying doctrine of pari delicto and dismissing entire action even though party claimed to be owed $20 million in premiums).

Under the Contract, the City represented and warranted that: "It has done and will continue to do all things necessary to preserve and keep in full force and effect . . . the Agreement"; "all requirements have been met and procedures have been followed by the [City] to ensure the enforceability of the Agreement"; and "The [City] . . . is relying on the advice of its counsel concerning all legal issues related to this Agreement and is not relying on Siemens in this regard." *See* R. Doc. 1 at 7 (Article 3.5(b), (c) and (e)). The City also committed to "furnish all approvals, permits and consents from the government authorities and others as may be required for performance of the work except for those SIEMENS has expressly agreed in writing to obtain." *See* R. Doc. 1 at 16 (Article 6.1(f)).

To the extent, if any, there is fault relating to Siemens Industry's licensure here, the parties at worst share the fault. Siemens Industry obtained an Arkansas contractor's license before entering into the Performance Contractor Agreement. *See* Ex. 1. That it failed to add any classifications to its renewals from 2011-2013 shows that it did not knowingly attempt to evade the license requirements when the burden and cost of adding classifications (a $100 fee) would have been nominal compared to the size of the transaction in the Contract. Moreover, as described below, the City waited until after this lawsuit was filed to complain, for the first time, about Siemens Industry's license.

The City reviewed Siemens Industry's license early on, because Siemens Industry submitted it in response to the City's RFQ. The City proceeded to contract only after reviewing this information. In the Contract, moreover, the City expressly warranted to Siemens Industry that "all requirements have been met and procedures have been followed by the [City] to ensure

11

the enforceability of the Agreement." The City then allowed Siemens Industry to install more than 4,300 water meters pursuant to the Contract, and the City made contracted payment to Siemens Industry. Had the City raised any supposed concerns about Siemens Industry's licensure in timely fashion, the parties surely would not be before the Court today.

Pursuant to the holding in *Crist*, the City is not entitled to any relief because it shared in the fault, if the contract is unenforceable, even though it has paid money pursuant to the Contract. The Court should grant Summary Judgment dismissing the action.

    **2.**    **Siemens Industry Is Ready And Willing To Perform The Remainder Of The Contract As Recently Requested By The City.**

As a separate and distinct basis for denying the remedy sought by the City, a party at fault as to the unenforceability of a contract "cannot maintain an action to recover the money paid so long as the other party is willing to perform and has the ability to perform." *Cf. Blackmon v. Berry*, 939 S.W.2d 863, 864 (Ark. Ct. App. 1997) (dismissing party's claim to recover money she paid on an unenforceable, but valid, oral contract for sale of land). There is no genuine dispute that Siemens Industry is willing to continue to perform as evidenced in its demand for specific performance in this action. *See* R. Doc. 1. The City was the party who originally prevented Siemens Industry from completing the water line replacement portion of the Contract. However, since that time, the City has recently demanded that Siemens Industry continue to perform on the Contract even after filing its Counterclaim. *See* Ex. 5. As a belt and suspenders approach to its contention that it has not violated the Contractors Licensing Act, Siemens Industry is in the process of submitting an amended class application to the Arkansas Contractors Licensing Board to clear up any ambiguity in licensing required for it to continue to perform the Contract. Essentially, this amended class application requires only references to prior similar

work in other states, and a $100 fee. Siemens Industry anticipates no problems because of successful similar work in other states.

Without the continued performance of the Contract, the City will be left without the financial guarantees that are the essence of this Performance Contracting Agreement, and the City would be left without labor and product warranties for the over 4,300 water meters installed. Dismissing this action and leaving the parties to complete performance of the Contract is, therefore, advantageous to both parties.

## **Conclusion**

Summary Judgment dismissing Count II of the Counterclaim is merited because Siemens Industry did not violate the Contractors Licensing Act. The applicable regulations authorized Siemens Industry and its subcontractors to replace the City's water meters and water lines without obtaining any additional license classifications. The statute and regulations are at best vague and must be construed to avoid finding a violation.

Alternatively, to the extent Siemens Industry would be found "in violation" of the Contractors Licensing Act and subject to the effects Ark. Code Ann. § 17-25-103(d), the parties have an unenforceable contract that continues to be valid and binding. Summary Judgment dismissing the entire action is merited because no action may be brought in law or in equity to enforce the contract by the parties to the Contract, the parties were equally at fault, and Siemens Industry is ready and willing to continue perform the remainder of the Contract as requested by the City.

Respectfully submitted,

**ADAMS AND REESE LLP**

/s/Don S. McKinney
Don S. McKinney (Ark. Bar No.: 95162)
Philip A. Franco (LA Bar #5819)
Justin J. Boron (LA Bar #33023)
One Shell Square – Suite 4500
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
E-Mail: don.mckinney@arlaw.com
Counsel for Siemens Industry, Inc.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 3rd, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participants.

/s/Don S. McKinney
DON S. MCKINNEY