IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

SIEMENS INDUSTRY, INC.                                                    PLAINTIFF/
                                                                COUNTER-DEFENDANT

vs.                              NO. 5:15-cv-00127 DPM/JTK

CITY OF MONTICELLO, ARKANSAS                                          DEFENDANT/
                                                                COUNTER-CLAIMANT

vs.

SIEMENS A.G.                                              THIRD-PARTY DEFENDANT


**CITY OF MONTICELLO'S
AMENDED & SUBSTITUTED
ANSWER TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIM
AND
DEMAND FOR JURY TRIAL**
_____

Comes now the City of Monticello, Arkansas (herein the "City"), by and through its

attorneys, Gibson & Keith, PLLC, and for its Amended and Substituted Answer to the First

Amended Complaint, Counterclaim, Third-Party Complaint, and Demand for Jury Trial herein,

states as follows:

## ANSWER TO FIRST AMENDED COMPLAINT

1.      The City admits that Siemens Industry, Inc. (herein "Siemens Industry") is a

Delaware corporation.

2.      The City admits that it is a municipality in the State of Arkansas.

3.      The City admits that this Court has diversity jurisdiction over the parties and the

subject matter of this action.

4.     The City admits that venue is proper in this Court.

5.     The City admits that both Siemens Industry and Siemens AG solicited the City to hire them to replace all of the City's water meters and a part of the City's water mains/lines. Affirmatively, as part of said solicitation their representative Tony Ardillo represented to the City's governing Council that Siemens is the 4th largest company in the world - an obvious reference to the big Siemens AG, not Siemens Industry, and the documents submitted by Mr. Ardillo to the City as part of said solicitation included the financial statements and other information of Siemens AG, not Siemens Industry, and he also submitted Powerpoint slides to the City's governing Council which were plainly marked with the name Siemens AG, not Siemens Industry. However, when the contract form was submitted to the City same recited that it was with Siemens Industry and made no mention of Siemens AG, and with the sleight of hand arising from the deceptive similarity of names of Siemens Industry and Siemens AG the 4th largest company in the world that the City thought it was dealing with on the project was not included as a party to the contract submitted to the City for approval.  That is fraud in the inducement.

6.     The City admits that during said solicitation Siemens Industry and Siemens AG represented to the City that the City's existing water meters were only 53.58% accurate. Affirmatively, on information and belief, that representation was false, and known to be false by Siemens Industry and Siemens AG, and was made to induce the City to enter into a $10 Million contract with them to replace all of the City's existing water meters and to contract with them to replace a part of the City's existing water mains/lines.  That was fraud in the inducement.

7.     The City admits its signing of the contract attached as Exhibit "A" to the Complaint,

and that same provides for replacement of all of the City's existing water meters and replacement of part of the City's water mains/lines. Affirmatively, Siemens Industry and Siemens AG procured the City's signing of said contract through fraud including, without limitation, the matters affirmatively set forth hereinabove.

8.     The City admits that on October 7, 2014, the City's governing Council voted to not proceed with the water main part of the project until the meter replacement phase was properly completed. Affirmatively, the City had earlier received a letter with a "Siemens" letterhead from Tony Ardillo which had advised that the "waterline renovation phase shall not commence until both parties mutually agree upon a said (sic) start date and scope of work." The City specifically denies any breach of contract on its part.

9.     The City denies the allegations of paragraph 9 of the First Amended Complaint. Affirmatively, the City states that it has recently discovered that neither Siemens Industry nor Siemens AG nor their subcontractors are properly licensed by the State of Arkansas Contractors Licensing Board to perform the Municipal & Utility Construction work covered by the contract, or to perform the Specialty contractor work of Meter Installation & Service covered by the contract. Simply put, it has been unlawful from the beginning for Siemens Industry and Siemens AG to do the work it has done under the contract, and Siemens Industry and Siemens AG may not lawfully engage to do the work remaining to be done under the contract, and under Ark. Code Ann. § 17-25-103(d) and other applicable law, neither the unlicensed Siemens Industry nor the unlicensed Siemens AG may bring an action to enforce the contract against the City, and they are further barred from seeking a quantum meruit recovery relative to the contract for any work done or materials supplied by them under the contract.

10.     The City admits that Siemens Industry and Siemens AG made material misrepresentations to the City to induce the City to engage them on the subject water utility project.

11.     The City denies that either Siemens Industry or Siemens AG requested mediation pursuant the contract, but, instead, wrote an e-mail to the City's counsel advising that mediation was an express condition precedent to any litigation, and expressed a willingness to negotiate a resolution of the problems being experienced by the City.

12.     The City admits that a mediation between the parties was scheduled and held by agreement of the parties on April 21, 2015. Affirmatively, Siemens Industry and Siemens AG did not engage in that mediation in good faith, but, instead, delayed the scheduling of the mediation for over three (3) months (apparently for litigation purposes), and then attended the April 21st mediation with the initial Complaint filed in this case in their pocket or possibly filed before or during the mediation. In other words, Siemens Industry and Siemens AG set up a mediation with no intent to mediate, but with full reprehensible intention to litigate as evidenced by their filing of this lawsuit on the same day as the April 21 mediation. The City admits that the feckless mediation of April 21, 2015, did not result in a resolution of any of the disputes and problems existing between the parties. But for a call from a reporter a week later, the City would not have known that Siemens Industry had filed the present lawsuit.

13.     The City denies the allegations of paragraph 13 of the First Amended Complaint.

14.     The City denies the allegations of paragraph 14 of the First Amended Complaint.

15.     The City denies the allegations of paragraph 15 of the First Amended Complaint.

16.     The City denies the allegations of paragraph 16 of the First Amended Complaint, and affirmatively states that specific performance is not an available remedy to Siemens Industry.

17.     The City denies the allegations of paragraph 17 of the First Amended Complaint.

18.     Each and every material allegation of the First Amended Complaint which have not been specifically admitted hereinabove are hereby denied.

19.     In addition to the above-recited affirmative defenses of the City to liability or responsibility under the contract or otherwise to Siemens Industry, the City further affirmatively states and asserts the following matters as defenses herein to the extent same apply to the facts of this matter:

(1)     fraud, fraud in the inducement, and constructive fraud;

(2)     breach of the covenant of good faith and fair dealing;

(3)     estoppel, illegality, failure of consideration and unjust enrichment;

(4)     excuse from the City having to perform under the contract that arises from breaches of contract and violations of law committed by Siemens Industry and Siemens AG relative to same;

(5)     immunity of the City from suit;

(6)     the failure of Siemens Industry and Siemens AG to be properly licensed by the State of Arkansas Contractors Licensing Board to perform the work covered by the contract;

(7)     the defective performance of work under the contract by Siemens Industry and Siemens AG;

(8)     breach of warranty of good workmanship under the contract by Siemens Industry and Siemens AG;

(9)     the failure of Siemens Industry and Siemens AG to provide the Hersey water meters

specified by the contract;

(10)    the furnishing of Sensus water meters instead of the Hersey water meters specified by the contract without a change order as required by the contract, and the fraudulent attempt to claim that the City's Mayor Allen Maxwell directed that Sensus meters, as opposed to contract-specified Hersey meters, and the failure of the Sensus water meters provided to be equal to the contract-specified Hersey water meters;

(11)    the illegality of the contract for failure to comply with competitive bidding laws of Arkansas, and its consequent voidness;

(12)    the failure of Siemens Industry and Siemens AG to timely provide legally required performance and payment bonds covering the work under the contract, and later falsely stating that those bonds had been delivered back in 2013 when they knew that same had not been so delivered;

(13)    the failure of Siemens Industry and Siemens AG to provide the legally required proper financial assurance that they will pay the City shortages in promised efficiency savings from the new water meters, water mains/lines, and other improvements covered by the contract, including, without limitation, a Letter of Credit for the 10-year life of the contract, Cash in Escrow, Multi-year Surety Bond, and/or a Third-Party Credit Rating Agency Verified Investment Grade Corporate Guarantee, all as required by Ark. Code Ann. § 14-164-402(15) and other applicable law;

(14)    the illegality of the contract arising from the failure of the contract submitted by Siemens Industry and Siemens AG to the City to contain the statutorily required

terms that they provide the financial assurances of the promised efficiency savings as required by Ark. Code Ann. § 14-164-402(15)(D) and other applicable law including without limitation a Letter of Credit for the 10-year life of the contract, Cash in Escrow, Multi-year Surety Bond, and/or a Third-Party Credit Rating Agency Verified Investment Grade Corporate Guarantee;

(15)   the illegality of the contract arising from the failure of the contract submitted by Siemens Industry and Siemens AG to the City to contain the statutorily required term that Siemens Industry and Siemens AG shall utilize the International Performance Measurement and Verification Protocol (IPMVP) to measure and value the efficiency savings throughout the term of the revenue bonds issued to finance the water meter and lines improvements to be constructed under the contract as required by Ark. Code Ann. § 14-164-402(15)(E);

(16)   the illegality of the contract arising from the contract terms providing for the counting of certain efficiency savings that will not be measured and valued through utilization of the IPMVP throughout the term of the revenue bonds issued to finance the water meter and line improvements to be constructed under the contract as required by Ark. Code Ann. § 14-164-402(15)(E);

(17)   the failure of Siemens Industry and Siemens AG to timely provide proper manufacturer warranties issued by the manufacturer to the City on the new water meters installed in the City, and the continuing failure of Siemens Industry and Siemens AG to provide any direct written acknowledgment of the manufacturer that the meters actually supplied to the City are covered by warranty;

(18)    the failure of Siemens Industry and Siemens AG to timely provide manufacturer recommendations/instructions on the new water meters installed in the City;

(19)    the taking of unfair advantage of the City by Siemens Industry and Siemens AG in the days and weeks following the untimely death of the City's Mayor Allen Maxwell on March 10, 2014, including (a) demanding over $4.8 Million in City taxpayer funds before any work or material had been provided to the City by Siemens Industry and Siemens AG and them obtaining that payment of over $4.8 Million by wire transfer from Union Bank of Monticello on the same day as Mayor Maxwell was being laid to rest at his funeral at the First Baptist Church of Monticello, (b) waiting until after Mayor Maxwell was dead to switch the water meters from the contract-specified Hersey meters to Sensus meters with which the City has experienced so many problems; and (c) milking the City for another almost $2 Million in payment from a temporary appointed mayor;

(20)    by Siemens Industry and Siemens AG specifically recommending and selling the City on being provided with the contract-specified Hersey meters, and then pulling a switch to Sensus meters after Mayor Maxwell was no longer around to object to such as he had done before;

(21)    by Siemens Industry and Siemens AG falsely representing to the City that "Siemens stands behind the products it supplies" when in true and in fact the contract provided by them to the City expressly disclaims any warranty on the products they supply;

(22)    by Siemens Industry and Siemens AG preparing and submitting plans to the City for complete replacement of water mains/lines in an area of the City where there was no

need for such, all of which was contrary to the representations and agreements of Siemens Industry and Siemens AG that water main/line replacement would be done in the "core" of the old part of the City where leaking water mains/lines was an issue;

(23)   on information and belief, by Siemens Industry and Siemens AG causing the meter testing company, Fluid Meter of Austin, Texas, to not share the results of its testing of the City's existing water meters with the City;

(24)   the terms of the contract which bar recovery of lost profits or consequential damages, and which limit damages that can be awarded against the City;

(25)   waiver, laches, limitations, failure of consideration, setoff, unclean hands, mutual mistake, and unilateral mistake coupled with inequitable conduct; and

(26)   every matter that constitutes an avoidance or affirmative defense under rules 8(c) and 12(b) of the Federal Rules of Civil Procedure.

20.   The City specifically reserves the right to plead further, including to assert additional affirmative defenses.

WHEREFORE, the premises considered, the City of Monticello prays that Siemens Industry's First Amended Complaint, as well as its initial Complaint filed herein, be denied and dismissed at its costs, and that it take nothing thereby; and that the City have and recover its attorney fees, costs and all other proper relief.

**AMENDED & SUBSTITUTED COUNTERCLAIM
AGAINST
SIEMENS INDUSTRY AND SIEMENS AG**

Comes now the City of Monticello and makes and asserts the following Counterclaim against Siemens Industry, Inc., and Siemens AG, pursuant to Fed. R. Civ. Proc. 13(a) & (g), 19 and 20, and other applicable law, and in support thereof states as follows:

<u>Parties, Jurisdiction & Venue</u>

1.    The City of Monticello, Arkansas (herein "City") is a municipality in the State of Arkansas.

2.    Siemens Industry, Inc. (herein "Siemens Industry") is a Delaware corporation doing business in the State of Arkansas.

3.    Siemens AG (herein "Siemens AG") is a German corporation with Registered Offices in Berlin and Munich, Germany.

4.    Siemens Industry is a wholly owned subsidiary of Siemens AG.

5.    On information and belief, Siemens Industry is controlled by Siemens AG.

6.    On information and belief, Siemens AG is the sole beneficiary and recipient of the revenues and profits generated by Siemens Industry.

7.    On information and belief, Siemens Industry is the alter ego and a mere instrumentality of Siemens AG in regards to the contract with the City, and, further, Siemens Industry was acting as agent of Siemens AG in making the contract with the City, and in the circumstances the separate corporate identity of Siemens Industry should be disregarded and pierced to allow direct action against Siemens AG.

8.    In the summer of 2011 representatives of Siemens AG and Siemens Industry solicited the City to hire them to replace all of the City's existing water meters and to replace part of the City's existing water mains/lines. Those representatives specifically informed the City's governing Council

that Siemens was the fourth largest company in the world - an obvious reference to the parent company Siemens AG. Further, those representatives provided financial and other information on Siemens AG, not Siemens Industry, to the City's governing Council as part of their said solicitation of the City. To close the deal, said representatives supplied the City's governing Council with a multi-page Powerpoint presentation, each page of which was clearly marked "Siemens AG", not Siemens Industry. However, through a sleight of hand or other fraud, and through use of the deceptively similar name of Siemens Industry, the contract submitted by said representative to the City and signed by the City listed Siemens Industry as the contractor, not the 4th largest company in the world - Siemens AG - that the City had been led to believe was the company that was going to do the contracted work.

9.     Siemens AG is hereby joined as an additional counter-defendant to this Counterclaim pursuant to Fed. R. Civ. Proc. 13(a) & (g), 19 and 20, and other applicable law.

10.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 as a result of the complete diversity of citizenship of the parties and the amount in controversy in excess of $75,000.00, exclusive of costs and interest. Further, this Court has supplemental jurisdiction over Siemens AG under 28 U.S.C. § 1367(a) and other applicable law.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 and other applicable law.

## COUNT - I
### CONTRACT IS ILLEGAL AND VOID
### FOR FAILURE TO COMPLY WITH COMPETITIVE BIDDING LAWS

12.     The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

13.    The construction work and material covered by the contract was not advertised for bid, nor were bids for same solicited, and, consequently, the contract at issue in this case was awarded in violation of applicable competitive bidding laws including, without limitation, the provisions of Ark. Code Ann. §§ 14-58-303(b)(2)(A)(i) and 22-9-203(a). Further, no advertisement or solicitation for bids contained the legally required statements encouraging participation of small, minority and women's business enterprises as required by Ark. Code Ann. § 22-9-203(I). The contract is, therefore, illegal and void, and the City is entitled to recover judgment against Siemens Industry and Siemens AG for return of the $6,724,912.93 advanced by the City to Siemens Industry and Siemens AG relative to the contract, plus prejudgment and post judgment interest at the highest rate provided by law.

14.    Although generally framed as a Qualified Efficiency Contract under the provisions of Ark. Code Ann. § 14-164-401, et seq., which enjoys exemption from competitive bidding by Ark. Code Ann. § 14-164-419(b), the contract at issue here fails to constitute a Qualified Efficiency Contract exempt from competitive bidding because is fails to "contain" the financial assurances relative to payment of promised/guaranteed efficiency savings as required by Ark. Code Ann. § 14-164-402(15)(D), and for the  additional reason that despite demand for such statutorily required financial assurances neither Siemens Industry nor Siemens AG have provided same to the City for the 10-year life of the project and the bonds financing same.  Further, the contract at issue here fails to constitute a Qualified Efficiency Contract exempt from competitive bidding because it fails to "contain" the statutorily required term that Siemens Industry and Siemens AG shall utilize the International Performance Measurement and Verification Protocol (IPMVP) to measure and value the efficiency savings throughout the term of the revenue bonds issued to finance the water meter

-12-

and line improvements to be constructed under the contract as required by Ark. Code Ann. § 14-164-402(15)(E), and because contract contains terms providing for the counting of efficiency savings that will not be measured and valued through utilization of the IPMVP throughout the term of the revenue bonds issued to finance the water meter and line improvements to be constructed under the contract as required by Ark. Code Ann. § 14-164-402(15)(E).

<u>**COUNT - II**</u>
<u>CONTRACT IS ILLEGAL AND UNENFORCEABLE
FOR FAILURE OF SIEMENS TO BE PROPERLY LICENSED BY THE ARKANSAS
CONTRACTORS LICENSING BOARD TO PERFORM THE WORK COVERED BY THE
CONTRACT</u>

15.      The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

16.      At the time it solicited the Contract and performed the installation of water meters for the City, neither Siemens Industry, Siemens AG, nor their subcontractor possessed a Municipal& Utility Construction classification contractors license.

17.      At the time it solicited the Contract and performed the installation of the water meters for the City, neither Siemens Industry, Siemens AG, nor their subcontractor were licensed in the sub-classification specialty of Meter Installation and Service.

18.      On information and belief, the subcontractor employed by Siemens Industry to install the water meters, Utility Metering Solutions, did not maintain at least one full-time employee holding a Master Plumbers license on the City's project to assure proper skills in performing and maintaining the plumbing projects covered by the contract.

19.     Siemens Industry's contractor license expired on January 31, 2014. Siemens Industry did not again become licensed to do contractor work in Arkansas until June 6, 2014.

20.     From March, 2014, through June 4, 2014, Siemens Industry installed approximately 60% of the water meters covered by the contract.

21.     As a result of the facts alleged above, Siemens Industry and Siemens AG violated Arkansas contracting law, Ark. Code Ann. § 17-25-101, et seq, and the rules and regulations established by the Arkansas Contractors Licensing Board by engaging to perform the construction work covered by the contract.

22.     As a result of those violations, neither Siemens Industry nor Siemens AG are entitled to receive any payment under the contract pursuant to Ark. Code Ann. § 17-25-103(d) and other applicable law, and the City is entitled to recover the full $6,724,912.93 advanced by the City to Siemens Industry and Siemens AG relative to the contract, plus prejudgment and post judgment interest at the highest rate provided by law.

## COUNT - III
### FRAUDULENT MISREPRESENTATION OF CONTRACTOR

23.     The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

24.     In their oral presentations, response to the Request for Qualifications submitted December 19, 2012, and Powerpoint presentation given on May 16, 2013, representatives of Siemens Industry and Siemens AG falsely represented to the City's governing Council that the contract would engage and be performed and backed by the financial strength and ability of the large multi-national conglomerate corporation Siemens AG, not a Delaware corporation of still unknown

financial strength that goes by the name Siemens Industry. Through use of the deceptively similar names of Siemens Industry and Siemens AG, they secured a contract on which only Siemens Industry was signed.

25.     The representatives of Siemens Industry and Siemens AG made said representations knowing or having reason to know them to be false as evidenced by their submission of the proposed contract with only the name Siemens Industry thereon, and not including Siemens AG, all as part of a trick on the City who was led from the beginning to believe that it was doing business with Siemens AG.

26.     These misrepresentations were intended to and did induce action by the City in reliance on same, and said reliance was justifiable. Specifically, said misrepresentations caused the City to believe that the full financial strength and ability of the multi-national conglomerate Siemens AG would be standing behind the obligations imposed on the contractor by the terms of the contract, including, without limitation, the obligation to pay any shortage in the efficiency savings promised to the City by the terms of the contract.

27.     On information and belief, the representatives making the solicitation of the City to engage their companies to do the work covered by the contract were acting as agents of both Siemens Industry and Siemens AG, and Siemens Industry was acting as agent for Siemens AG in the matter, all of which makes Siemens AG vicariously liable for the misrepresentations made to the City.

28.     As a result of its reliance on said misrepresentations, the City was tricked into signing the contract with Siemens Industry as opposed to Siemens AG. The City would not have knowingly

entered a contract for the $10 Million meter and water main/line projects with the likes of a Delaware corporation of unknown financial ability.

29.     The above-described actions of Siemens Industry and Siemens AG constitute fraud in the inducement and constructive fraud, and the Court should rescind the Contract between the City and Siemens Industry, and require that Siemens Industry and Siemens AG return to the City the $6,724,912.93 advanced by the City to Siemens Industry and Siemens AG relative to the contract, plus prejudgment and post judgment interest at the highest rate provided by law. Further, the City should be awarded a reasonable sum as punitive damages for this fraud to punish both Siemens Industry and Siemens AG and to deter them and others from similar conduct in the future.

**COUNT - IV**
**FRAUDULENT MISREPRESENTATION OF METER TEST RESULTS**

30.     The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

31.     During their solicitation of the City to engage them on the meter and water main/line projects, the representatives of Siemens Industry and Siemens AG represented to the City that the City's existing water meters were only 53.58% accurate. That representation was false, and known to be false by Siemens Industry and Siemens AG, and was made to induce the City to enter into a $10 Million contract with them to replace all of the City's existing water meters and to contract with them to replace a part of the City's existing water mains/lines. That was fraud in the inducement.

32.     Siemens Industry and Siemens AG subsequently raised its representations relative to the accuracy rate of the City's existing water meters to 84.6%, but concealed from the City's governing Council that the most recent sampling and testing of the City's existing water meters had

an accuracy rate of 95.2% for the obvious reason that such a good accuracy rate would reveal that replacement of the City's existing water meters was not economically justified and should not be done.

33.     The City justifiably relied on said misrepresentations. Specifically, the City would not have entered the contract had it known the truth about the accuracy of its existing water meters.

34.     The above-described actions of Siemens Industry and Siemens AG constitute fraud in the inducement and constructive fraud, and the Court should rescind the contract between the City and Siemens Industry, and require that Siemens Industry and Siemens AG return to the City the $6,724,912.93 advanced by the City to Siemens Industry and Siemens AG relative to the contract, plus prejudgment and post judgment interest at the highest rate provided by law. Further, the City should be awarded a reasonable sum as punitive damages for this fraud to punish both Siemens Industry and Siemens AG and to deter them and others from similar conduct in the future.

### COUNT - V
### BREACH OF CONTRACT - SUPPLY OF WRONG METERS

35.     The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

36.     Siemens Industry and Siemens AG breached the terms of the contract by furnishing Sensus water meters instead of the Hersey water meters specified by the contract without a change order as required by the contract.

37.     Said breach of contract proximately caused damages to the City in that the Sensus meters have not performed as the Hersey meters would have performed and are not equal or equivalent to Hersey meters, there have been multiple failures of the Sensus meters to function and,

-17-

as a result, the City has had to expend considerable sums for repair and replacement of those non-functioning Sensus meters, for all of which the City should have judgment over and against Siemens Industry and Siemens AG.

## COUNT - VI
### BREACH OF CONTRACT/WARRANTY IMPROPER INSTALLATION OF WATER METERS

38.    The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

39.    Over 1,231 of the approximately 4,300 water meters covered by the contract were improperly installed by Siemens Industry and Siemens AG or were defective or damaged, all of which resulted in leaks and other problems for the City and the personnel of its water department, and which resulted in mud, dirt and sand being carried into the homes and businesses of the City's water customers, and which were all in violation of contract covenants and warranties relative to meter installation including, without limitation, the express and implied covenants that the meter installation work would be performed to standards of good workmanship.

40.    Said breaches of contract/warranties proximately caused damages to the City in that the City has had to expend considerable sums to deal with the repair of those improperly installed and damaged meters, and for which the City should have judgment over and against Siemens Industry and Siemens AG.

## COUNT - VII
### BREACH OF CONTRACT/WARRANTY IMPROPER INSTALLATION OF WATER METERS

41.     The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

42.     Siemens Industry and Siemens AG have breached the contract by not providing the City with the written commitment of Sensus meter company that the specific Sensus water meters are covered by warranty against defect.

43.     A large number of failed Sensus meters have been pulled by the City and sent to Sensus, but as yet Sensus has not acknowledged its warranty obligations on these defective meters or to reimburse the City for its labor and the cost of replacement water meters.

44.     The City should have judgment over and against Siemens Industry and Siemens AG for all damages sustained by the City relative to said defective Sensus water meters.

### <u>COUNT - VIII</u>
<u>BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING</u>

45.     The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

46.     Every contract contains an implied covenant of good faith and fair dealing. Siemens Industry and Siemens AG have breached that covenant in many respects as outlined and delineated hereinabove.

47.     Further, that covenant of good faith and fair dealing has been breached by Siemens Industry and Siemens AG by taking advantage of the confusion associated with the unexpected death of Mayor Maxwell to extract many millions of dollars from the City before Mayor Maxwell

could even be laid to rest, and by supplying and installing thousands of Sensus water meters to the City instead of the contract-specified Hersey meters.

48.     Further, on information and belief, Siemens Industry and Siemens AG breached the covenant of good faith and fair dealing by stopping the meter testing company, Fluid Meter of Austin, Texas, from providing copies of the results of its testing on the City's existing water meters to the City.

49.     Siemens Industry and Siemens AG also breached the covenant of good faith and fair dealing by falsely representing to the City that "Siemens stands behind the products it supplies" when in truth and in fact the contract provided by them to the City expressly disclaims any warranty on the products they supply.

50.     The City should be awarded judgment against Siemens Industry and Siemens AG for all damages sustained by the City as a result of their breach of the covenant of good faith and fair dealing.

## COUNT - IX
### IN THE ALTERNATIVE, MISTAKE

51.     The City incorporates and realleges the foregoing paragraphs, including those affirmative statements in the Answer, as if set out herein.

52.     Pleading in the alternative, the City is entitled to rescission of the contract and restitution of unearned City funds advanced to Siemens Industry and Siemens AG under the contract based on mutual mistake of fact or unilateral mistake of fact coupled with inequitable conduct on the part of Siemens Industry and Siemens AG relative to the identity of the contractor who is

-20-

obligated to perform the construction work at issue, and as to the true accuracy of the City's existing water meters.

## REQUEST FOR JUDGMENT AND OTHER RELIEF

WHEREFORE, the premises considered, the City of Monticello, Arkansas, prays for judgment herein as follows:

1.      Declaratory Judgment declaring that the contract is illegal and void, and Ordering return of all City funds paid to Siemens Industry and Siemens AG on the contract plus prejudgment and postjudgment interest thereon at the highest rate provided by law, or a money judgment for same against Siemens Industry and Siemens AG, jointly and severally;

2.      Rescission of the contract and an Order requiring Siemens Industry and Siemens AG to return all unearned City funds advanced to them plus prejudgment and postjudgment interest thereon at the highest rate provided by law, or a money judgment for same against Siemens Industry and Siemens AG, jointly and severally;

3.      Judgment against Siemens Industry and Siemens AG for all damages sustained by City as a result of their several breaches of contract;

4.      Judgment against Siemens Industry and Siemens AG for all damages sustained by the City as a result of the fraud practiced on the City by Siemens Industry and/or Siemens AG.

5.      Judgment against Siemens Industry and Siemens AG for punitive damages to punish Siemens Industry and Siemens AG for their reprehensible conduct in this matter, and to deter them and others from engaging in such conduct in the future;

6.      Judgment against Siemens Industry and Siemens AG for all attorneys fees and litigation expenses and costs incurred by the City relative to said breaches of contract and other claims herein;

7.      And all other proper relief to which the City is justifiably entitled.


## DEMAND FOR JURY TRIAL

The City of Monticello, Arkansas, respectfully demands that all issues and claims herein be tried to and determined by a jury.


Respectfully submitted,

GIBSON & KEITH, PLLC
Attorneys For City of Monticello
119 South Main Street
Post Office Drawer 447
Monticello, AR   71657
Phone: 870/367-2438
Fax:    870/367-8306

By:   */s/ C.C. Gibson, III*
            C. C. Gibson, III
            Ark. Bar No. 81067
            E-Mail: ccgiii@gibsonandkeith.com

By:    */s/ Lee D. Curry*
            Lee D. Curry
            Ark. Bar No. 2014153
            E-Mail: ldc@gibsonandkeith.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 30, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to all counsel of record in this case.

_<u>/s/ **Lee D. Curry**</u>_
Lee D. Curry
