IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

SIEMENS INDUSTRY, INC.             PLAINTIFF/
            COUNTER-DEFENDANT

vs.            NO. 5:15-cv-00127 DPM/JTK

CITY OF MONTICELLO, ARKANSAS             DEFENDANT/
            COUNTER-CLAIMANT

vs.

SIEMENS A.G.             THIRD-PARTY DEFENDANT

**MEMORANDUM BRIEF IN SUPPORT OF
CITY OF MONTICELLO'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

<u>Summary of Argument.</u>

      The City of Monticello, Arkansas (herein "City") moves for summary judgment dismissing the Amended Complaint, R. Doc. 7, of Siemens Industry, Inc. (herein "Siemens") which seeks specific performance of the contract at issue in this case or, in the alternative, damages for breach of contract.[1]  Siemens is not entitled to any of the relief requested by its Amended Complaint because the contract is void, illegal and unenforceable by reason of same having been made without

---

[1] The contract at issue has previously been filed as an exhibit to Siemens' original complaint, *see* R. Doc. 1, Exhibit A, but while same reflects signing by the City, it does not reflect signing and approval by Siemens.  In order to assure that a complete copy of the fully signed contract is made a part of the record in this case, the City submits same as Exhibits 1 and 2 to its present Motion for Partial Summary Judgment.  The contract, complete with all exhibits and attachments thereto, is so long that same had to be broken into two exhibits, same being Exhibits 1 and 2, because the contract as one document exceeded the maximum size of a single document filed in the CM/ECF system.

compliance with the competitive bidding requirements of Arkansas law.

Standard for Summary Judgment.

This Court succinctly expressed the standard for summary judgment in *Aaron v. Anthony*, 2013 U.S. Dist. LEXIS 52858 as follows: "Pursuant to Fed.R.Civ.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). 'The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (other citations omitted). 'Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.' *Id.* at 1135. Although the facts are viewed in a light most favorable to the non-moving party, 'in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.' *Id.*"

Argument.

This being a diversity jurisdiction case, the Court is required to apply state law to the substantive law issues involved. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

**I – The contracted work and material should have been competitively bid.**

Here Siemens solicited[2] and obtained a contract[3] with the City to install new water meters and lines in the City without same being competitively bid.[4]  Arkansas law is clear that $10 Million construction projects, such as the one before the Court, are required to be bid.

"No contract providing for the making of major repairs or alterations, for the erection of buildings or other structures, or for making other permanent improvements shall be entered into by . . . a . . . municipality . . . with any contractor in instances where all estimated costs of the work shall exceed the sum of twenty thousand dollars ($20,000) unless . . . [the] municipality . . . shall have first published notice of its intention to receive bids . . . ." Ark. Code Ann. § 22-9-203(a) & (a)(2).[5]

---

[2]  Siemens actually drafted and guided the solicitation and contract process beginning with drafting of the request for proposals, statement of qualifications, and the notice to be published by the City seeking proposals, and instructed the City on handling those matters, *see* R. Doc. 30-4, and Siemens was the only contractor to respond to the request for proposals, *see* Exhibit 3.

[3]  Exhibits 1 and 2 together constitute a true copy of the parties' contract which is entitled "Performance Contracting Agreement".

[4]  Exhibit 4 is the affidavit of the City's Mayor affirming that the construction work and material covered by the contract was not let for competitive bid.

[5]  Arkansas has a strong public policy in favor of the competitive bidding process. "Since numerous complaints have been made with regard to the manner of letting contracts for construction for the state and local taxing units and it being the belief that passage of this act will result in substantial savings of money to the public, and the possibility of unethical practices will be materially eliminated by this act, being necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist . . ." 1949 Ark. Acts 159 § 6. The Arkansas General Assembly has also stated: "It is the intent of this section and §§ 22-9-203 and 22-9-204 to provide a uniform procedure that a taxing unit shall follow when work is done under formal contract." Ark. Code Ann. § 22-9-202(a).  In light of these clear and unequivocal statements of Arkansas public policy, it is abundantly clear that municipal public improvement contracts in excess of $20,000, such as the one at issue here, must be subjected to competitive bidding under Ark. Code Ann. § 22-9-203.

The work and material to be provided under the contract should have been subjected to competitive bid under Ark. Code Ann. § 22-9-203(a)(2), but it wasn't. *See* Exhibit 4.

It would be noted, however, that there is a limited exception to the law's competitive bid requirement for "performance-based efficiency projects" done under a "Qualified Efficiency Contract". *See* Ark. Code Ann. § 14-164-401, *et seq.*, *and see* Ark. Code Ann. § 14-164-419.

Performance-based efficiency projects are projects where the dollar benefit to be derived from constructing/installing proposed improvements (called "efficiency savings") will at least equal the cost of paying the bonds issued to finance the construction of those improvements. *See* Ark. Code Ann. § 14-164-402(15)(C); *and see* Ark. Code Ann. § 14-164-402(6).

Here, however, the contract at issue does not constitute a "Qualified Efficiency Contract" exempt from competitive bidding requirements applicable to government procurement contracts. There are at least two (2) reasons this is true.

First, the contract at issue does not contain the statutorily required terms that provide for financial assurances backing up the contractor's guarantee of efficiency savings. Second, the contract at issue does not contain the statutorily required terms that provide for measuring and valuing the promised efficiency savings throughout the term of the bonds issued to finance the project, and actually contains terms contradicting this "measuring and valuating" requirement by limiting same to only one (1) year of "measuring *or monitoring*" a part of the promised efficiency savings (known as Operational Savings), and by providing for measuring and valuing of the promised efficiency savings through a protocol/procedure other than the International Performance Measurement and Verification Protocol (IPMVP) required by the statute.

As to the first reason the contract at issue does not constitute a "Qualified Efficiency

Contract" exempt from competitive bidding, we would direct the Court's attention to Ark. Code Ann. § 14-164-402(15)(D) which provides:

*"'Qualified efficiency contract' means a written contract between an issuer and a qualified efficiency engineering company for the completion of a performance-based efficiency project that **contains** the following terms and conditions:*

*\*               \*               \**

*(D)   The qualified efficiency engineering company **shall** guarantee to the issuer the aggregate amount of efficiency savings to be derived by the issuer from the performance-based efficiency project by providing in favor of the issuer:*

*(i)   A letter of credit issued by a federally insured banking institution;*

*(ii)   An amount of cash equal to the aggregate projected efficiency savings to be placed in escrow with an independent escrow agent;*

*(iii)   A multiyear surety bond insuring the aggregate amount of efficiency savings guaranteed by the qualified efficiency engineering company that must remain in force throughout the term of any revenue bonds issued under this subchapter to finance any costs and expenses associated with the performance-based efficiency project;*

*(iv)   If the qualified efficiency engineering company has an investment-grade credit rating as established in writing addressed to the issuer by an independent third-party credit rating agency, a corporate guarantee of the qualified efficiency engineering company; or*

*(v)   Any combination of subdivisions (15)(D)(i)-(iv) of this section;*

(Emphasis Supplied).

Here the contract at issue simply does not "contain" the statutorily required terms providing for financial assurances backing up the efficiency savings promised by Siemens to the City. *See* Exhibits 1 and 2. Further, despite repeated demands made by the City on Siemens to provide the statutorily required financial assurances, *see* Exhibits 5 and 6, Siemens has failed to provide same. Eventually Siemens got around to providing a one-year surety bond to secure the promised efficiency savings, *see* Exhibit 7, but that ignores the statute's above-quoted requirement for *multi-year* surety bonds that cover the aggregate amount of promised efficiency savings throughout the term of the 30-year revenue bonds[6] issued to finance the improvements, and also ignores the ten (10) years of efficiency savings promised by Siemens to the City, *see* Exhibit 1, at page 34. The City pointed this out to Siemens and reiterated its demand for the statutorily required financial assurances backing up the guaranteed efficiency savings. *See* Exhibit 8.

As to the second reason the contract at issue does not constitute a "Qualified Efficiency Contract" exempt from competitive bidding, we would direct the Court's attention to Ark. Code Ann. § 14-164-402(15)(E) which provides:

*"'Qualified efficiency contract' means a written contract between an issuer and a qualified efficiency engineering company for the completion of a performance-based efficiency project that **contains** the following terms and conditions:*

　　　　　　　*　　　　　　*　　　　　　*

*(E)　　The qualified efficiency engineering company **shall** utilize the International Performance Measurement and Verification Protocol to measure and value the efficiency savings*

---

[6] *See* Exhibit 9 (official transcript of revenue bond issue) at page 5, *et seq.*

*throughout the term of any revenue bonds issued pursuant to this subchapter*;

(Emphasis Supplied).

Here the contract at issue simply does not "contain" the statutorily required terms that provide for measuring and valuing the promised efficiency savings throughout the term of the bonds issued to finance the project. *See* Exhibits 1 and 2. Further, the contract at issue actually contains terms contradicting the statutorily required "measuring and valuating" requirement by limiting same to only one (1) year of "measuring *or monitoring*" a part of the promised efficiency savings, *see* Exhibit 1 at pages 36, 37, 46 and 47, and by providing for "measuring *or monitoring*" of the promised efficiency savings through a protocol/procedure other than the IPMVP required by the statute, *see* Exhibit 1 at pages 34 and 45. Finally, Ark. Code Ann. § 14-164-402(15)(E) requires that the promised efficiency savings be "measured and valued" and does not allow for "*monitoring*" those savings.

Since, for the reasons set forth above, the contract at issue fails to constitute a "Qualified Efficiency Contract", the work and materials to be provided by Siemens to the City under that contract are not exempt from the competitive bidding requirements of Arkansas law. *See* Ark. Code Ann. § 14-164-419(grants exemption from competitive bidding statutes, including Ark. Code § 22-9-203 cited hereinabove, in the limited circumstance of a "Qualified Efficiency Contract").

## II – The failure to comply with competitive bidding statutes renders the contract void, illegal and unenforceable.

The Arkansas Supreme Court has outlined three classifications of "cases involving alleged irregular dealings between an individual and a governmental subdivision" as follows:

> (1) There are those cases in which a city or county or other governmental

subdivision has contracted or acted in an informal manner, and received property which it was not strictly supposed to receive in the manner pursued, but in which cases the acts were *not forbidden by statute*. In those cases, the governmental subdivision must either tender back the acquired articles, or pay therefor. Some such cases are *Ft. Smith v. U. S. Rubber Co.*, 184 Ark. 588, 42 S. W. 2d 1004; *Perry County v. J. A. Riggs Tractor Co.*, 200 Ark. 304, 139 S. W. 2d 46; *Ft. Smith v. Giant Mfg. Co.*, 190 Ark. 434, 79 S. W. 2d 440; *Yaffee Iron & Metal Co. v. Pulaski County*, 188 Ark. 808, 67 S. W. 2d 1017.

  (2) There are those cases in which an official has contracted with the district or counsel or other governmental subdivision of which he was a member, and has rendered services or supplied materials in good faith, and when the contract *was not forbidden by statute*, but was still something that should not have been done. In those cases -- where the contract was *not forbidden by statute* -- the court has allowed a recovery by the individual against the governmental subdivision in a *quantum meruit* basis. Some such cases are: *Spearman v. Texarkana*, 58 Ark. 348, 24 S. W. 883, 22 L. R. A. 855; *Frick v. Brinkley*, 61 Ark. 397, 33 S. W. 527; *Smith v. Dandridge*, 98 Ark. 38, 135 S. W. 800, 34 L. R. A., N. S., 129, Ann. Cas. 1912D, 1130.

  (3) There are those cases in which an individual has dealt with the district, council, board, or other governmental subdivision *in plain violation of the letter of the statute*, and has received public money under a course of dealings *forbidden by statute*. In those cases the courts have not only refused the individual the *quantum meruit* for his services rendered, but have also allowed recovery by the governmental subdivision of any moneys paid the individual, on a contract forbidden by statute. Some such cases are: *Tallman v. Lewis*, 124 Ark. 6, 186 S. W. 296; *Carter v. Bradley County Road Improvement District*, 155 Ark. 288, 246 S. W. 9; *Ridge v. Miller*, 185 Ark. 461, 47 S. W. 2d 587; *Gantt v. Arkansas Power & Light Co.*, 189 Ark. 449, 74 S. W. 2d 232. These cases are the ones we refer to as "the rule of *Tallman v. Lewis*"; . . .
The rule of *Tallman v. Lewis* was applied in the case of *Carter v. Bradley County Road Improvement District* to a person who was not a member of the board, but had sought to contract in violation of the statute.

*Vick Consol. School Dist. v. New*, 208 Ark. 874, 880-882, 187 S.W.2d 948, 950-951 (1945)

(Emphasis in Original).

  The first line of cases identified in *Vick* refer to instances where a governmental subdivision enters into a contract that is not forbidden by statute, but which was not authorized in the proper manner. Here, we are dealing with a $10 Million water meter/line construction contract made

without subjecting same to competitive bidding. The making of such a contract is forbidden by Ark. Code Ann. § 22-9-203 as demonstrated earlier in this brief. Consequently, the cases set forth in (1) above are not applicable to the contract at issue in this case.

The second line of cases identified in *Vick* addresses situations where an official of a governmental subdivision improperly contracts with the subdivision, but where such a contract is not expressly prohibited by statute. This line of cases does not apply to the contract at issue because the procurement of the work and material involved in the subject $10 Million water meter/line project without competitive bidding is expressly prohibited by Ark. Code Ann. § 22-9-203, all as demonstrated earlier in this brief. It would be additionally noted that the contract at issue is not one made by an official of a government subdivision with that subdivision.

The third line of cases applies to the present situation. "The general rule is that where a contract is expressly prohibited by law, and the statute in terms declares the contract to be null and void, no recovery can be had under it that a taxpayer has a right to maintain an action to recover back money illegally paid when its officers neglect or refuse to perform their duty in that respect." *Tallman*, 124 Ark., at 12. However, it is not necessary that the statute explicitly state the contract is null and void, if the statute "amounts to an express prohibition . . . and to permit a recovery upon rights growing out of such a contract would in effect abrogate the statute." *Id*. "[T]he general rule is that all agreements or contracts, whether sealed or otherwise, in contravention of statutes, are void and all contracts in contravention of the policy of an act of the Legislature are illegal and void. [C]ontracts having for their object the violation, defeat, or evasion of a statute are illegal and void." *Id*., at 13. *See, also, American Fidelity Ins. Co. v. Builders United Constr., Inc.*, 272 Ark. 179, 180-81 (1981) (continued application of the principles of *Tallman*); *cf. City of Damascus v. Bivens*, 291

Ark. 600, 726 S.W.2d 677 (1987)(in the circumstance of a failure to competitively bid sealing of city streets, the court, while refusing enforcement of the contract, allowed *quantum merit* recovery by the contractor given that he had no knowledge of whether the city there had followed the law with respect to bids on the project).

The contract at issue is clearly one made in direct violation of the competitive bidding requirements of Ark. Code Ann. § 22-9-203, and as demonstrated above same does not constitute a "Qualified Efficiency Contract" exempt from competitive bidding.  Consequently, Siemens may not seek enforcement of the contract, and cannot seek damages for any alleged breach of same, as attempted by its Complaint, as amended, R. Docs. 1 & 7, and summary judgment should be awarded to the City dismissing same.

Although not necessary for the granting of summary judgment dismissing the Siemens Complaint, the City believes that it should be noted that Siemens was well aware of the competitive bidding requirements of Arkansas law when it solicited and enticed the City to engage it to do the construction work involved in the $10 Million water meter/line project at issue.  Siemens' knowledge in this regard is evidenced by its efforts to convince the City to not bid the project, but to do a performance-based efficiency project which is not required to be bid if properly done.  While Siemens was successful in getting the City officials to go with a performance contract, the contract documents submitted by Siemens to the City on the project did not contain statutorily required terms needed to make the project qualify for an exemption from competitive bidding, all as demonstrated earlier in this brief.[7]

---

[7] In contrast to the situation in *City of Damascus v. Bivens*, 291 Ark. 600, 726 S.W.2d 677 (1987) where the contractor had no knowledge of whether the city of Damascus had complied with competitive bidding requirements of Arkansas law, here Siemens was directly and

-10-

Siemens' knowledge in this regard is evidenced by the PowerPoint materials given to the City Council by Siemens' man Ardillo in his initial presentation to the City Council on October 11, 2011, where he actually worked to convince the City Council that performance-based contracting was superior to competitively bidding the project, *see* Exhibit 11 - October 2011 PowerPoint, particularly at page 10 thereof, and in the process emphasized "SIEMENS 100% FINANCIAL GUARANTEE", *id.*, a thing which is not backed up in the contract by a cash in escrow, letter of credit, multi-year surety bond, etc., as required by the performance contracting statutes, Ark. Code Ann. § 14-164-402(15)(D).

In that PowerPoint presentation Mr. Ardillo also emphasized "accountability for project performance" in his sales pitch to the City, *see* Exhibit 11 - October 2011 PowerPoint, particularly at page 10 thereof, but, again, the contract prepared and submitted by Siemens to the City did not contain the statutorily required "measurement and valuation" terms, and, contrary to the statute, limited the measuring *(or monitoring* as discussed earlier) of a part of the promised efficiency savings (known as Operational Savings) to a one-year term instead of the statutorily required term equal to the 30 years that the bonds financing the project would be outstanding, and even provided for promised efficiency savings that would not be measured and valued according to the protocols required by Ark. Code Ann. § § 14-164-402(15)(E), all as discussed in detail earlier in this brief.

---

intimately involved in the decision to not do a bid procurement as noted in the text of this brief, and was the driver in submitting everything pertaining to the contract signed, as well as the contract itself. Siemens prepared the request for proposals (as opposed to requests for bids) for the City to publish, *see* R. Doc. 30-4, and instructed the City on publication of same, *see* R. Doc. 30-4, and prepared the Statement of Qualifications that contractors must meet, *see* R. Doc. 30-4. Then Siemens submitted a long and complex performance contract for signing by the City, and after one change suggested by Siemens' legal counsel was made to the contract form specific to the Arkansas statutes governing performance contracts, *see* Exhibit 10, and a few other minor corrections of no importance here, the Siemens' contract was signed.

Further evidence that Siemens knew about the requirements of Arkansas law relative to performance-based efficiency contracts and exemption of same from competitive bidding is the citation in the contract to a part of that law, specifically Ark. Code Ann. § 14-164-402(15)(E), *see* Exhibit 1 at page 45, that was included in the contract at the suggestion of Siemens' own legal counsel, *see* Exhibit 10.

The bottom line is that Siemens, a clearly sophisticated company, was directly involved in convincing the City to not competitively bid the project, drafted and guided all of the associated paperwork including the contract itself, and at the same time did not include the statutorily required terms in the contract that the legislature had decided were needed to allow the project to be exempted from the usual competitive bidding requirements applicable to $10 Million construction projects.

The Arkansas legislature was careful in describing the specific provisions that must be met in order for a performance project to be excused from competitive bidding. The legislature obviously knew that by granting the exemption from competitive bidding of performance-based efficiency contracts that the public would not be getting the cost and other benefits associated with competitive bidding. It seems worthy to again note the strong policy of Arkansas to require competitive bidding:

> *Since numerous complaints have been made with regard to the manner of letting contracts for construction for the state and local taxing units and it being the belief that passage of this act will result in substantial savings of money to the public, and the possibility of unethical practices will be materially eliminated by this act, being necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist . . ."*

1949 Ark. Acts 159 § 6. The Arkansas General Assembly has also stated the following regarding competitive bidding statutes:

> *It is the intent of this section and §§ 22-9-203 and 22-9-204 to provide a uniform procedure that a taxing unit shall follow when work is done under formal contract.*

Ark. Code Ann. § 22-9-202(a).

Aside from the obvious cost savings to the public from competitive bidding, there are other benefits to be derived from following the competitive bidding statute Ark. Code Ann. § 22-9-203. They include the requirement for a "bid-bond" under Ark. Code Ann. § 22-9-203(c)(2)(A)(I) to provide financial assurance backing for the contractor's promise to perform, and the requirement of Ark. Code Ann. § 22-9-203(i) that projects in excess of $75,000, such as the one at issue, contain a statement in the bid documents encouraging the participation of small, minority, and women's business enterprises.

There is also the prohibition of Ark. Code Ann. § 22-9-203(k)(1) against requiring contractors to belong to, or be endorsed or certified by a particular association or organization in order to be qualified to bid. That statute reads:

> *(k)(1)  The state, an agency of the state, a county, a municipality, a school district, or other local taxing unit shall not require in plans or specifications that a bidder or supplier:*
>
> > *(A)  Hold membership in any professional or industry associations, societies, trade groups, or similar organizations;*
> >
> > *(B)  Possess certification from any professional or industry associations, societies, trade groups, or similar organizations as steel building fabricators; or*
> >
> > *(C)  Be endorsed by any professional or industry associations, societies, trade groups, or similar organizations.*

*Id.*

While that prohibition is codified as a subpart to the competitive bidding statute Ark. Code

-13-

Ann. § 22-9-203, it appears to be a statute of general application to any contract with the state or other subdivision thereof, including a municipality. If a statute of general application, same would provide an additional basis to declare the contract at issue illegal and unenforceable as the request for proposals drafted by Siemens, *see* R. Doc. 30-4, for use by the City requires all contractors submitting proposals to "[p]rovide a copy of [the contractor's] current accreditation certificate from the National Association of Energy Service Companies (NAESCO) along with the accreditation letter explaining the relevance". R. Doc. 30-4 at page 13, and see R. Doc. 17-1, at page 13. Such a provision certainly limits eligible contractors on the subject $10 Million water meter/line project to those who have an accreditation certificate from NAESCO. Notably, there are only 25 such NAESCO certified companies world wide. *See* Exhibit 12 - NAESCO website documents. Simply put, the Arkansas legislature is dead set against such a requirement. The Emergency Clause enacting the prohibition against such set forth in § 22-9-203(k)(1) reads as follows:

> *SECTION 5. EMERGENCY CLAUSE. It is found and determined by the General Assembly of the State of Arkansas that requirements in plans and specifications which require bidders and suppliers to hold membership in certain professional organizations limit the number of eligible bidders and suppliers for projects; that by requiring bidders and suppliers to hold membership in professional organizations, an entity may increase the possibility of certain bidders and suppliers receiving projects, which is an inequitable outcome; and that the state of Arkansas and its citizens will benefit from enhanced competition for bidders and suppliers on public construction projects. Therefore, an emergency is declared to exist and this act being immediately necessary for the preservation of the public peace, health, and safety . . ..*

2005 Ark. Acts No. 859.

Here, however, with the NAESCO-accredited limitation on eligible contractors, the City only received one (1) proposal in response to the advertisement – the proposal of Siemens. *See* Exhibit 3. That is proof positive that the limitation of prospective contractors to only NAESCO-accredited

-14-

contractors deprived the City of any proposals from competitors of Siemens.

But, irrespective of whether § 22-9-203(k)(1) is a statute of general application, it clearly is part of the competitive bid requirements of Ark. Code. Ann. § 22-9-203, just like the bid-bond and encouragement of small, minority and women business requirements set forth above. Clearly the legislature would not forego or waive these important requirements associated with competitive bidding without demanding, as it did, that any exception to those rules, and the competitive bidding rule, be complied with – which, in this case, did not happen as critical terms required by statute to have financial assurances backing the contractor's performance guarantee were not included in the contract crafted by Siemens, nor was the statutorily required term included that requires "measuring and valuing" of efficiency savings by certain prescribed protocols throughout the term of the bonds used to finance the project.

Before closing, the City is compelled to point out a very similar situation involving Siemens[8] and the Iberville Parish (Louisiana) School Board. There the Siemens crafted performance-based efficiency contract contained a clause stating that the Operational Savings promised and guaranteed to Iberville Schools were deemed to be achieved upon execution of the contract, and further provided that neither party would have any right to object to the use of those stipulated savings as the amount of Operational Savings in the calculation of the actual savings achieved. The Louisiana court determined that such ran afoul of the requirement of its performance contracting law that the guaranteed savings be measured and valued, and granted Iberville Schools summary judgment determining the contract was not a valid performance contract exempt from competitive bidding

---

[8] At that time Siemens Industry, Inc., went by the name Siemens Building Technologies, Inc. *See* Exhibit 17.

laws, and that same should have not been awarded without competitive bidding as required by law – that the contract was, in effect, an attempt by Siemens to make an end-run around the Louisiana laws requiring its political subdivisions to competitively bid projects, and that summary judgment ruling was denied review by both the Louisiana Court of Appeals and Supreme Court. *See* Exhibit 13 (Iberville Motion for Summary Judgment and Brief in Support), *and see* Exhibit 14 (transcript of oral arguments on summary judgment), *and see* Exhibit 15 (Judgment of the Louisiana District Court), *and see* Exhibit 16 (Judgment of La. Court of Appeals), *and see Siemens Building Technologies, Inc. v. Iberville Parish School Board*, 978 So.2d 328, 2008 WL 1765598 (La.), 2008-0336 (La. 4/4/08) *writs denied*. There, as here, Siemens initiated litigation on the contract, and even used the same law firm and lawyers who are litigating in its behalf in this case. That lawsuit proceeded much as this one is proceeding, except that this time Siemens buried the "agreed" or "stipulated" Operational Savings in the overly complex and lengthy (195 pages) contract at issue here.

In the case of the Siemens crafted contract at issue here, same defines "Annual Realized Savings" as "the actual Savings achieved by the CLIENT during an Annual Period, calculated as the sum of the Measured & Verified Savings ***plus*** the ***Stipulated Savings***." Exhibit 1, at page 4 (Emphasis Supplied). "Stipulated Savings" are defined by the contract as savings "agreed upon in advance by the Parties and cannot be changed." Exhibit 1, at page 6. Sounds just like the illegal un-bid Siemens contract involved in the Iberville Schools case.[9]

---

[9] This situation led to the Louisiana Attorney General (who intervened in the Iberville Schools case) to state the following to the Judge at the hearing on summary judgment had there: "So, what [Siemens has] come up with is a way to play the game of getting the public dollar but not take any risk of having to pay any of it back based on the reality of the situation. In other words, they're going to stipulate to the score before the game is played. You can still go play

Notably, the contract at issue here defines "Operational Savings" as being "Stipulated Savings". Exhibit 1, at page 5. In the Performance Assurance exhibit to the contract, Operational Savings are described as savings "defined and quantified by the Parties" and in which the Parties "acknowledge that the Guaranteed Savings identified herein have been based on [the City's] affirmation." Exhibit 1, at pages 36 and 37 (also numbered pages 4 and 5 of the Performance Assurance exhibit to the contract). Again, one has language similar to the Siemens contract in the Iberville Schools case where the parties have "agreed" to the amount of savings that will be realized without any measuring and valuing of same as required by as required by Ark. Code Ann. §14-164-402(15)(E). Admittedly, the present Siemens crafted contract goes on to say that guaranteed Operational Savings will be "measured ***or monitored***" during the first year of the performance guarantee period, Exhibit 1, at pages 36 and 37 (also numbered pages 4 and 5 of the Performance Assurance exhibit to the contract), but such ignores the clear and unequivocal requirement of Ark. Code Ann. §14-164-402(E) that the "measuring and valuing" of efficiency savings shall be done "throughout the term of any revenue bonds issued" to finance the construction of the water meter/line improvements, and, we hasten to add, the subject contract provision actually says that Operational Savings will be "measured ***OR MONITORED***" – again missing the point that Ark. Code Ann. §14-164-402(E) requires that the efficiency savings be *measured and valued,* ***not monitored***.

And it must be added that the Operational Savings promised to the City are not a small thing

---

your game, but the outcome of the real game is irrelevant and immaterial to what their obligations are. That's the stipulation. The law doesn't allow that. The law says you've got to play the game. The score of the game counts, and every year, every year, annually, you tally up the score to see whether or not the guarantee by Siemens was achieved." Exhibit 14 at pages 23-24.

in this instance – they actually are shown in the contract to be well over $1 Million each and every year for 10 years, *see* Exhibit 1, at page 34 (also numbered page 2 of the Performance Assurance exhibit to the contract) – and actually constitute over 90% of the efficiency savings promised to the City by Siemens, *see* Exhibit 1, at page 34 – and collectively constitute more than the $10 Million needed to cover the cost of making the water meter/line improvements, Exhibit 1, at pages 31 and 34 – and these Operational Savings are at best going to be measured "or monitored" *for only one year* of the performance guarantee period. A grosser violation of the letter and intent of Ark. Code Ann. §14-164-402(E) cannot be imagined.

That all said, we ask the Court to remain mindful that there is also the failure of Siemens to provide the financial assurances required by statute to backup the guaranteed efficiency savings – a thing clearly sufficient in itself to declare the contract at issue one that does not constitute a "Qualified Efficiency Contract" exempt from competitive bidding requirements of Arkansas law.

**Conclusion.**

The contract at issue is void, illegal and unenforceable by reason of same not having been competitively bid, and the failure of the contract to constitute a "Qualified Efficiency Contract" under the performance-based contracting statutes. Consequently, the Court should grant the City summary judgment dismissing Siemens' Complaint, as amended, R. Docs. 1 & 7, as a matter of law.

        Respectfully submitted,

        GIBSON & KEITH, PLLC
        Attorneys For City of Monticello
        119 South Main Street
        Post Office Drawer 447
        Monticello, AR   71657
        Phone: 870/367-2438
        Fax:   870/367-8306

        By:   */s/ C. C. Gibson, III*
            C. C. Gibson, III
            Ark. Bar No. 81067
            E-Mail: ccgiii@gibsonandkeith.com

        By:   */s/ Lee D. Curry*
            Lee D. Curry
            Ark. Bar No. 2014153
            E-Mail: ldc@gibsonandkeith.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on December 31, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to all counsel of record in this case.

        */s/ C. C. Gibson, III*
        C. C. Gibson, III