IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

SIEMENS INDUSTRY, INC. PLAINTIFF/ COUNTER-DEFENDANT

v. No. 5:15-cv-127-DPM

CITY OF MONTICELLO, ARKANSAS DEFENDANT/ COUNTER-CLAIMANT/ THIRD-PARTY PLAINTIFF

v.

SIEMENS AG THIRD-PARTY DEFENDANT

# ORDER

**1.** Siemens Industry sues for a declaration that the City of Monticello violated the parties' $10 million water-meter and pipeline contract by stopping Siemens* from finishing the job. Monticello alleges problems with Siemens's contractor's license as an affirmative defense and as a counterclaim for disgorgement of the $6 million already paid. Siemens asks the Court to decide, as a matter of law, what Arkansas's contractor-licensing statute means for the parties' dispute. *№ 25.* As part of its response, Monticello suggested that it was entitled to judgment on this point, though it had filed no motion.

---

*The Court puts to one side the presence of a related Siemens entity (Siemens A.G.) in the case, and will use this shorthand.

*№ 31 at 9*. During oral argument, Siemens asked the Court to rule as a matter of law one way or the other. These circumstances satisfy the spirit if not the letter of Rule 56. The Court, then, faces what amount to cross motions for judgment. The effect of the statute on the undisputed facts is a question of law. *McLemore v. Weiss*, 2013 Ark. 161, at 6, 427 S.W.3d 56, 60.

The papers started as a fight about what type of contractor's license Siemens needed before it could replace the City's water meters. The summary judgment proof disclosed, though, that Siemens didn't have any type of license during much of the project. *№ 32 at 2*. Siemens says never mind that: it hired a subcontractor whose license never lapsed. The important thing, according to Siemens, is that it was properly licensed when the contract was made. If the statute makes the contract void in those circumstances, Siemens says the case is a dog fall.

**2.** These are the undisputed facts. The City signed a contract with Siemens in September 2013. *№ 1 at 33, 35*. Siemens then had a "building" contractor's license. *№ 26-1 at 3*. That meant Siemens could use subcontractors, including those licensed to do various specialty work. ARK. ADMIN. CODE 033.00.1–224-25-7(e). Siemens hired X-Tra Light to install the

water meters. *№ 32 at 4*. X-Tra Light had specialty licenses for plumbing and underground piping. *№ 26-3 at 5*. Siemens's building contractor's license lapsed in late January 2014. It was reinstated four months or so later, in early June. *№ 26-1 at 3–4*. The meter work started in late February, and was sixty percent done by early June. *№ 30-1 at 1 & 30-2 at 1*. The upshot is that Siemens had no license while most of the meter work was done.

**3.** The disputed statute's title is apt: "Penalties—Enforcement." This provision, Ark. Code Ann. § 17-25-103, is harsh. *Williams v. Joyner–Cranford–Burke Construction Company*, 285 Ark. 134, 139, 685 S.W.2d 503, 506 (1985). The statute's text is in an appendix. The law provides four main roads to penalize those who violate it and to enforce its terms.

First, subsection (a) makes violations a crime and specifies a sliding scale of fines. This part of the statute also lists the many ways a contractor can violate the law. ARK. CODE ANN. § 17-25-103(a)(1)(A) & (2)–(5).

Second, subsection (b) empowers the Contractor's Licensing Board to refuse licenses to those who violate the law and to revoke the licenses of those who do so. ARK. CODE ANN. § 17-25-103(b). The law authorizes the Board to conduct administrative enforcement proceedings: it can hold hearings, and

issue subpoenas, in gathering evidence about alleged violations. ARK. CODE ANN. § 17-25-103(c).

Third, the statute limits the private lawsuits that may be brought when it has been violated. ARK. CODE ANN. § 17-25-103(d). Siemens and Monticello clash mostly on this ground. Understandably so—Arkansas courts have routinely deployed subsection (d) in rejecting suits from unlicensed contractors seeking payment for their work. E.g., *Central Oklahoma Pipeline, Inc. v. Hawk Field Services, LLC*, 2012 Ark. 157, at 13, 15–16, 400 S.W.3d 701, 710, 711.

Fourth, and last, the statute authorizes the Board to impose penalties, which are tied to a violation's duration and the dollars in the project, as well as seek enforcement of any such Board order in circuit court. ARK. CODE ANN. § 17-25-103(e). For contractors under these administrative guns, the statute provides some shelter: a three-year limitation period and the Arkansas Administrative Procedure Act. ARK. CODE ANN. § 17-25-103(e)(3) & (4).

The parties focus on subsection (d), what Judge Henley called the "no action clause," which closes the courthouse to some private litigants who get tangled up with a statutory violation. *Ottinger v. Blackwell*, 173 F. Supp. 817,

821 (E.D. Ark. 1959). The Court has sketched the whole in some detail, though, for a reason. The statute's structure, and the meaning of other subsections, informs the meaning of § 17-25-103(d). *Burcham v. City of Van Buren*, 330 Ark. 451, 455, 954 S.W.2d 266, 269 (1997); *McDonald v. Bowen*, 250 Ark. 1049, 1055, 468 S.W.2d 765, 769 (1971).

**4.** The disputed provision says this:

> No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this chapter. No action may be brought either at law or in equity for quantum meruit by any contractor in violation of this chapter.

ARK. CODE ANN. § 17-25-103(d).

Siemens and Monticello agree that no violation of the statute's first sentence occurred here. Siemens was a licensed general contractor in September 2013 when the parties made their contract about the water meters. A general contractor may, and often does, use subcontractors with specialty licenses to complete a job. Whatever specialty certification was needed to install these water meters, the parties' contract wasn't "entered into" in violation of the statute.

Siemens is right in emphasizing the temporal aspect of the statute's plain words. The Arkansas Supreme Court did the same thing in the *Quality*

*Fixtures* case. The winning bid from an unlicensed subcontractor didn't offend this statute because the sub had fixed things with the Board, and gotten the correct license, by the time those parties made their contract. *Quality Fixtures, Inc. v. Multi-Purpose Facilities Board for Pulaski County, Arkansas*, 337 Ark. 115, 120, 986 S.W.2d 865, 867 (1999). The statute doesn't say no action may be brought on any contract entered into *or performed* in violation of the law. Mid-project statutory violations, the Court concludes, are for the Contractor's Licensing Board under § 17-25-103(e), and perhaps the prosecuting attorney under § 17-25-103(a). More on this in a moment.

This penal statute must, the parties agree, be strictly construed. *Wilcox v. Safley*, 298 Ark. 159, 161, 766 S.W.2d 12, 13 (1989). So read, the first sentence embraces any action by a contractor on a contract that violated the statute at formation but no more. The Siemens/Monticello contract did not violate the statute when made. The Court need not decide, and doesn't, whether a contractor could use the statute as a shield against suit by an aggrieved party if the contract was made in violation of the statute. That vexed issue is beyond this case. *Compare Ottinger*, 173 F. Supp. at 821.

What about § 17-25-103(d)'s second sentence? "No action may be brought either at law or in equity for quantum meruit by any contractor in violation of this chapter." Monticello says these words doom Siemens's complaint. Siemens was in violation because its general contractors license, the company acknowledges, lapsed during performance. Assuming without deciding that X-Tra Light's (its subcontractor) specialty licenses for plumbing and underground piping were the right ones, Siemens lost the statutory authority to supervise and manage the project during January to June 2014 interregnum. That undisputed lapse, according to the City, is the end of Siemens's complaint.

For four reasons, the Court disagrees with Monticello's reading of § 17-25-103(d)'s second sentence.

*First*, this sentence is about quantum meruit claims, not all claims. That is the plainest and fairest reading. But Monticello's construction requires the reader to supply some punctuation: "No action may be brought either at law[,] or in equity for quantum meruit[,] by any contractor in violation of this chapter." ARK. CODE ANN. § 17-25-103(d) (with added emphasis). It's not the

Court's role to punctuate plain statutes to add meaning. Without the comma-cued pauses, no average reader would get the meaning the City argues for.

*Second*, the genesis of the second sentence confirms its plain meaning and targeted reach. It was a late comer, a statutory addition in response to a judicial decision. In *Sisson v. Ragland*, the Arkansas Supreme Court agreed that the unlicensed contractor had no breach claim, but sent his quantum meruit claim back for adjudication, holding that the then-existing version of § 17-25-103(d) didn't bar that relief. 294 Ark. 629, 632, 745 S.W.2d 620, 622 (1988). The Arkansas General Assembly responded in the next session. Ark. Act No. 795 of 1989. The new second sentence eliminated what Justice Hickman had called, in his *Sisson* concurring opinion, a good case for the lawyer's "legal tricks notebook." 294 Ark. at 633, 745 S.W.2d at 622. The new sentence is about quantum meruit—claims for "as much as [the contractor] has deserved." *Black's Law Dictionary* 1437 (10th ed. 2014).

Third, the General Assembly's post-*Sisson* addition makes good sense without the commas. A claim for quantum meruit can sound in either law or equity. RESTATEMENT (THIRD) RESTITUTION AND UNJUST ENRICHMENT § 4 (2011). It's simply a restitution claim to avoid unjust enrichment. The

RESTATEMENT comments: "The status of restitution as belonging to law or to equity has been ambiguous from the outset. The answer is that restitution may be either or both." § 4 cmt. a. The RESTATEMENT's comment b to § 49 covers this history well. Consider, also, Judge Arnold's discussion of different kinds of assumpsit and related matters in *U.S. v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606–09 (8th Cir. 1999). General assumpsit, also known as indebitatus assumpsit, was an action at law seeking a quantum meruit recovery for goods or services conferred. 182 F.3d at 606. No one talks about assumpsit anymore. But quantum meruit is routinely invoked, as the umbrella of last resort, when a contract might fail for some reason or when one might not cover the disputed issue. A comprehensive response to *Sisson*, then, required the General Assembly to eliminate an unlicensed contractor's potential "pay me what I deserve" claim, whether at law or in equity. This was particularly true in 1989, which was more than a decade before Arkansas merged law and equity. Ark. Const. amend. 80, § 19.

*Fourth*, with a penal statute like this one, a tie goes to the runner. If Monticello is correct, and § 17-25-103(d)'s second sentence can be read two ways, then the Court must adopt the reading that favors Siemens. The

company is the one who stands to be penalized. *Wilcox*, 298 Ark. at 161, 766 S.W.2d at 13. This is part of what it means to construe a penal statute strictly. Harsh results must be confined to clear cases.

There's a final point. In *Clow v. Vickers Construction Co.*, 2011 Ark. App. 662, 2011 WL 5176774, the Arkansas Court of Appeals applied § 17-25-103(d) in a lapsed-license case. The timing facts were similar to those here. The contractor was licensed when he and the Clows made their deal; the contractor's license lapsed, and was reinstated, while he was building the Clows' home and shop; the parties fell out; and the Court of Appeals eventually rejected the contractor's claim for breach or quantum meruit. That sounds like this case. For various reasons, though, the Court declines to follow *Clow*.

This Court's job is to decide what the Arkansas Supreme Court would hold this statute means in a situation like the Siemens/Monticello dispute. There is no Supreme Court decision directly on point about § 17-25-103(d) and a lapsed license. So this Court must make an *Erie*-educated prediction about Arkansas law. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). The Court of Appeals' decision in *Clow* is an important indicator. *Progressive*

*Northern Insurance Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). But it is not dispositive; and it cannot silence this statute's words, the Arkansas Supreme Court's holdings in other cases interpreting Ark. Code Ann. § 17-25-103, or the Arkansas precedent about penal statutes.

*Clow* has little weight in this dispute because the parties there seem to have assumed § 17-25-103(d)'s applicability in a lapse situation. The *Clow* Court did not puzzle over the statute's words, the "entered into in violation" phrase, or the ways in which the quantum meruit sentence might be read. Instead, the fighting issue was whether § 17-25-103(d) applied to a *residential* contractor such as Vickers Construction. The Court was wrestling with companion statutes about the contractors who build homes and the interplay between those statutes and § 17-25-103(d). 2011 Ark. App. 662 at 3–5, 2011 WL 5176774, at *1–*2. *Clow*, in sum, doesn't carry the day for Monticello.

Siemens isn't seeking a quantum meruit recovery. Monticello has paid the company for the work done so far. Siemens had a valid general contractors license when the parties made their contract. The license lapse is a matter for other forums. So, too, the parties' dispute about what specialty license Siemens's subcontractors needed. This is a matter of the Board's

regulations, which it made, administers, and understands. The statute gives the Board plenary administrative authority to address license lapses and specialty disputes by investigating them, making findings, and, where necessary, imposing civil penalties. ARK. CODE ANN. § 17-25-103(e). Those administrative proceedings are the main statutory method for protecting the public. In extreme cases, a locally elected prosecutor may press criminal charges and seek a fine. ARK. CODE ANN. § 17-25-103(a)(1)(A). A narrow reading of Ark. Code Ann. § 17-25-103(d), though, means it closes the courthouse to a contractor's civil suit in only two situations: when the parties made their contract in violation of this law; or when the contractor seeks a quantum meruit recovery. The Siemens/Monticello dispute presents neither situation. Ark. Code Ann. § 17-25-103(d) has no work to do here.

* * *

Siemens's motion for partial summary judgment, *№ 25*, is granted. Count 2 of Monticello's amended counterclaim is dismissed with prejudice. Monticello's embedded cross motion for partial summary judgment, *№ 31 at 9*, is denied.

So Ordered.

D.P. Marshall Jr.
United States District Judge

2 February 2016

# Appendix

**17-25-103. Penalties — Enforcement.***

(a) Any contractor shall be deemed guilty of a misdemeanor and shall be liable to a fine of not less than one hundred dollars ($100) nor more than two hundred dollars ($200) for each offense, with each day to constitute a separate offense, who:

(1)(A) For a fixed price, commission, fee, or wage attempts to or submits a bid or bids to construct or demolish or contracts to construct or demolish, or undertakes to construct or demolish, or assumes charge in a supervisory capacity or otherwise, or manages the construction, erection, alteration, demolition, or repair of, or has constructed, erected, altered, demolished, or repaired, under his or her or its direction, any building, apartment, condominium, highway, sewer, utility, grading, or any other improvement or structure, when the cost of the work to be done, or done, in the State of Arkansas by the contractor, including, but not limited to, labor and materials, is twenty thousand dollars ($20,000) or more, without first having procured a license with the proper classification to engage in the business of contracting in this state.

(B) Subdivision (a)(1) of this section shall not apply to any demolition work or other work necessary to clean up a natural disaster within seventy-two (72) hours following the natural disaster;

(2) Shall present or file the license certificate of another;

(3) Shall give false or forged evidence of any kind to the Contractors Licensing Board or any member thereof in obtaining a certificate of license;

(4) Shall impersonate another; or

(5) Shall use an expired or revoked certificate of license.

---

*A 2015 amendment that upped the triggering contract price is immaterial. Ark. Act No. 1048 of 2015.

(b) The doing of any act or thing herein prohibited by any applicant or licensee shall, in the discretion of the board, constitute sufficient grounds to refuse a license to an applicant or to revoke the license of a licensee.

(c) Regarding any violation of this chapter, the board shall have the power to issue subpoenas and bring before the board as a witness any person in the state and may require the witness to bring with him or her any book, writing, or other thing under his or her control which he or she is bound by law to produce in evidence.

(d) No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this chapter. No action may be brought either at law or in equity for quantum meruit by any contractor in violation of this chapter.

(e)(1)(A) Any contractor who, after notice and hearing, is found by the board to have violated or used a contractor in violation of this chapter shall pay to the board a civil penalty of not less than one hundred dollars ($100) nor more than four hundred dollars ($400) per day for the activity. However, the penalty shall not exceed three percent (3%) of the total project being performed by the contractor.

(B)(i) The penalty provided for in this chapter plus interest at ten percent (10%) per annum shall be paid to the board before the contractor can be issued a license to engage in the business of contracting in this state.

(ii) In addition to the assessment of the penalty, the board, upon a finding of a violation of this chapter, may issue an order of abatement directing the contractor to cease all actions constituting a violation of this chapter.

(2) The board shall have the power to withhold approval for up to six (6) months of any application from any person who, prior to approval of the application, has been found in violation of this chapter.

(3) All hearings and appeals therefrom under this chapter shall be pursuant to the provisions of the Arkansas Administrative Procedure Act, § 25-15-201 et seq.

(4) No proceedings under this chapter may be commenced by the board after three (3) years from the date on which the act or omission which is the basis for the proceeding occurred.

(5) The board shall have the power to file suit in the Pulaski County Circuit Court to obtain a judgment for the amount of any penalty not paid within thirty (30) days of service on the contractor of the order assessing the penalty, unless the circuit court enters a stay pursuant to the provisions of this chapter.

(6)(A) The board shall have the power to file suit in the Pulaski County Circuit Court to enforce any order of abatement not complied with within fifteen (15) days, excluding Saturdays, Sundays, and legal holidays, of service on the contractor of the order of abatement.

(B) If the circuit court finds the order of abatement to have been properly issued, it may enforce the order by any means by which injunctions are ordinarily enforced.

(C) However, nothing shall be construed herein to diminish the contractor's right to appeal and obtain a stay pursuant to the procedures provided for in this chapter.