IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


SIEMENS INDUSTRY, INC.                                                    PLAINTIFF/
                                                                COUNTER-DEFENDANT


vs.                              NO. 5:15-cv-00127 DPM/JTK


CITY OF MONTICELLO, ARKANSAS                                          DEFENDANT/
                                                                COUNTER-CLAIMANT


vs.


SIEMENS A.G.                                          THIRD-PARTY DEFENDANT


**CITY OF MONTICELLO'S REPLY
TO SIEMENS INDUSTRY'S RESPONSE IN OPPOSITION
TO CITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

Siemens' response admits that the contract in issue does not comply with the statutory

requirements necessary to have a "qualified efficiency contract" exempt from competitive bidding

requirements of Arkansas law, but seeks to avoid the consequences of such by arguing (1) that the

City "waived" the failure of the contract to comply with statutory requirements for a qualified

efficiency contract, and (2) that the parties "substantially complied" with the statutory requirements

for a qualified efficiency contract for the exemption to competitive bidding to apply.

Simply put, the City does not have the power to "waive" the competitive bidding

requirements set forth in Ark. Code Ann. §22-9-203, nor does it have the power to waive the

statutory requirements for a "qualified efficiency contract" exempt from competitive bidding statutes

under Ark. Code Ann. §§ 14-164-402 and 419.

"[A] municipal corporation has no powers except those expressly conferred by the legislature

or those necessarily implied as incident to or essential for the attainment of the purposes expressly declared." *Duncan Parking Meter Corp. v. City of Gurdon*, 146 F. Supp. 280, 284 (W.D. Ark. 1956).   "A person contracting with a municipal corporation is charged with notice of its limited powers and must, at his peril, inquire into its powers." *Id.* at 285.

When it comes to competitive bidding, the Arkansas legislature was careful to restrict the power of a municipality relative to same.

Ark. Code Ann. § 14-43-602(a) states that a municipality has power over "municipal affairs". Ark. Code Ann. § 14-43-601(a)(1) defines "municipal affairs" as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government *except the following, which are state affairs and subject to the general laws of the State of Arkansas:*

\* \* \* (B) *Uniform requirements for competitive bidding on contracts* . . .." (Emphasis Supplied).

It is clear from the plain language of the quoted state statute that the City of Monticello has no power or authority to alter or "waive" any state law requirements respecting competitive bidding that have been prescribed by the legislature.

It would, nevertheless, be noted that "[a] municipality may legislate upon the state affairs described in (a)(1) of this section if not in conflict with state law."   Ark. Code Ann. § 14-43-601(a)(2)(B).   Siemens' problem here is that any legislative act of the City that would work to cancel any state law requirements for a bid-exempt "qualified efficiency contract" would "conflict with state law", and, consequently, would not be permitted under the state statute just quoted.

We would also note that the competitive bid statute governing major public construction projects such as that at issue here, Ark. Code Ann. § 22-9-203, does not provide any authority or

means by which a municipality can "waive" any of the mandatory provisions thereof.   Such a

circumstance led the Arkansas Attorney General to opine as follows:

> Dear Dr. Jewell:
>
> This is in response to your letter in which you requested an opinion on whether competitive bidding on local public works projects can be waived.
>
> The General Assembly, by enactment of Ark. Stat. Ann. §§ 14-611 *et seq.* (Repl. 1968)[now codified as Ark. Code Ann. § 22-9-203], established the bidding procedures for school districts, municipalities, counties and state agencies on construction projects.  The statutes require that bids be taken when the estimated cost of the making of major repairs or alterations, the erection of buildings or other structures, or the making of other permanent improvements exceeds $10,000,00. ***There are no statutory provisions which allow the waiver, for any reason, of competitive bidding by school districts, municipalities, counties and state agencies on these construction projects.***

Ark. Op. Atty. Gen. No. 78-56 (Ark.A.G.), 1978 WL 21630 (Emphasis Supplied).

The same is true for the statutes governing bid-exempt performance contracts.  No provision

is contained in those statutes that would give a municipality any authority to waive any of the

mandatory requirements thereof.  *See* Ark. Code Ann. § 14-164-401, *et seq.*[1]

Moreover, there is "Dillon's Rule" relative to municipal authority which has been followed

by the Arkansas Supreme Court as far back as *Town of Newport v. Batesville & Brinkley Ry. Co.*,

58 Ark. 270, 24 S.W. 427 (1893), which has more recently been expressed by the Arkansas Supreme

Court as follows:

---

[1] It would be mentioned that there is another competitive bidding statute, Ark. Code Ann. § 14-58-303(b)(2)(B), which provides that "[t]he governing body by ordinance may waive the requirements of competitive bidding in exceptional situations where this procedure is not deemed feasible or practical . . .", but according to the Arkansas Supreme Court such may only be achieved "where there is an affirmative showing by enactment of a separate ordinance that the solicitation of bids is not feasible or practical,"*Klinger v. City of Fayetteville*, 293 Ark. 128, 131, 732 S.W.2d 859, 860 (1987), a thing totally absent here.

> Municipal corporations are creatures of the legislature and as such have only the power bestowed upon them by statute or the Arkansas Constitution. It is well settled that municipal corporations have no inherent powers and can exercise only (1) those expressly given to them by state statute or the Arkansas Constitution, (2) those necessarily implied for the purposes of, or incident to, the express powers, and (3) those indispensable, not merely convenient, to their objects and purposes. Finally, any substantial doubt about the existence of a power in a municipal corporation must be resolved against it.

*White Cty. v. Cities of Judsonia, Kensett & Pangburn*, 369 Ark. 151, 155-156, 251 S.W.3d 275, 279 (2007) (internal citations omitted); *see also*, *City of Little Rock v. Raines*, 241 Ark. 1071, 1079, 411 S.W.2d 486, 491 (1967)(citing *Town of Newport v. Batesville & Brinkley Ry. Co.*, *supra,* where it was stated: "An absolute excess of authority by the officers of a corporation, in violation of law, cannot be upheld, and, ***when the officers of such a body fail to pursue the requirements of a statutory enactment under which they are acting, the corporation is not bound***. In such case the statute must be *strictly* followed." 24 S.W. at 429)(Emphasis Supplied). Thus, in this case the requirements of the Arkansas performance contract statutes must be *strictly* followed, and waiver, estoppel, substantial compliance, and the like will not save a contract made in violation of those statutes. *See id.*

While Dillon's Rule has been abrogated by the legislature relative to "municipal affairs", Ark. Code Ann. § 14-43-602(b), it remains in force relative to "state affairs" which are by statute *excluded* from "municipal affairs", Ark. Code Ann. § 14-43-601(a)(1), and "state affairs" are specifically described by statute to include "requirements for competitive bidding on contracts", Ark. Code Ann. § 14-43-601(a)(1)(B). *See Bolin v. State*, 2015 Ark. 149, 459 S.W.3d 788 (2015)("The express designation of one thing may be properly construed to mean the exclusion of another." *Id.* at 6, 459 S.W.3d at 792).

Siemens nevertheless urges a liberal[2] construction of the performance contracting statutes to support its contention that the City had the power to waive the mandatory statutory requirements needed to have a bid-exempt "qualified efficiency contract".  However, Siemens does not follow up that request with any proposed construction of the subject statutes, nor does it allege that any statutory terms are in any way ambiguous.[3]  Instead, Siemens cites the Court to cases outside the context of exemptions from state law competitive bidding requirements.

Before addressing those cases, we believe it is important to note that Siemens is asking this Court to ignore the plain and unambiguous mandatory terms of the performance contracting statutes. "The word 'shall' when used in a statute means that the legislature intended ***mandatory compliance*** unless such an interpretation would lead to an absurdity."  *Klinger v. City of Fayetteville*, 293 Ark. 128, 131, 732 S.W.2d 859, 860 (1987)(Emphasis Supplied).  The statute at issue plainly states that a qualified efficiency engineering company (in this case, Siemens Industry) ***shall*** guarantee to the issuer (in this case, the City), the aggregate amount of the efficiency savings by one or more of the four authorized mechanisms, *see* Ark. Code Ann. § 14-164-402(15)(D); and also plainly states that the qualified efficiency engineering company ***shall*** utilize the IPMVP to measure and value the efficiency savings (the definition of which includes operational savings) throughout the term of the revenue bonds,  *see* Ark. Code Ann. § 14-164-402(15)(E).

---

[2]   Here Siemens seizes upon language from Ark. Code Ann. § 14-164-403 which dates back to a time when this part of the Arkansas Code was only a revenue bond issue statute, and some two decades before the performance contracting statutes made their way into this part of the Code.

[3]  Here it should be noted that "[i]f the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation."  *Valley v. Pulaski Cty. Cir. Ct.*, 2014 Ark. 112 at 7-8.

We would also note that Siemens does not dispute (a) the fact that the contract does not "contain" terms providing for the financial assurances prescribed by § 14-164-402(15)(D), or (b) the fact that the contract does not "contain" the terms requiring measurement and valuation of the operational savings throughout the term of the revenue bonds issued to finance the project that are prescribed by § 14-164-402(15)(E), all as required by the language set forth in the opening paragraph of § 14-164-402(15) in order to have a "qualified efficiency contract" exempt from competitive bidding under § 14-164-419.  In noting such, the City is not making a technical argument, but is simply applying the plain language of the applicable statutes to the undisputed facts of this case.

Further, as noted in its initial brief, the City made repeated demands on Siemens to provide the statutorily required financial assurances,[4] and Siemens dodged the issue,[5] but finally sent a one-year bond partially backing its performance guarantee under the contract on January 5, 2015.[6] The City promptly informed Siemens that a one-year bond did not comply with the statute's requirement

---

[4] *See* R. Doc. 69-5 and 69-6 and Exhibit 3 to this Reply.

[5] *See* Exhibits 1 and 2 to this Reply.

[6] Siemens' brief in support of its response says this one-year bond backing the performance guarantee was provided on November 4, 2014, *see* R. Doc. 81 at page 7, and cited R. Doc. 69-7 in support of that statement.  As 69-7 reflects, this bond was actually sent to the City over 2 months later on January 5, 2015.  This mistake is easily understood considering that Siemens did send a regular contractor bond to the City on November 4, 2014.  Yep, the City didn't even have a regular contractor bond (to protect against liens, etc.) from Siemens, and had to make a written demand for that as well, R. Doc. 69-5, at pages 1 and 2, before it got it.

for a "multi-year surety bond"[7] backing up the contract's 10-year performance guarantee.[8] Siemens' response to the City's MPSJ admits that it still has yet to provide the City with a "multi-year surety bond", but now, over a year later, for the first time Siemens informs the City through its response that the one-year bond it provided "may be renewed annually so it is capable of lasting multiple years to guarantee payment of the revenue bonds."  R. Doc. 81, at page 17.  While ignoring the statute's requirement for a "multiyear surety bond *insuring the aggregate amount of efficiency savings . . . must remain in force throughout the term of any revenue bonds* issued under this subchapter to finance any costs and expenses associated with the performance-based efficiency project", § 14-164-402(15)(D)(iii), Siemens gets carried away with its argument saying that it has a "right to renew" the bond annually.  R. Doc. 81, at page 17.  Such is simply not true as revealed by the typed language on the face of the bond, to-wit: "*[n]otwithstanding anything contained in the contract to the contrary, the liability of the principal and the surety under this bond is limited to the term of the contract from January 1, 2016 to January 1, 2017.  Any extensions or renewals of this bond must be consented to in writing by the principal and the surety.  Failure to extend or renew this bond by principal and the surety shall not constitute a default under this bond.*"[9]  That noted,

---

[7]  Which the statute says "must remain in force throughout the term of any revenue bonds issued . . . to finance [the project]."  Ark. Code Ann. § 14-164-402(15)(D)(iii).

[8]  R. Doc. 69-8.  While of little importance in the context of this matter, it will be briefly noted that Siemens's response mischaracterizes the subject letter by asserting that same says the multi-year surety bond was required by the "terms of the Contract", *see* R. Doc. 81, at page 7.  That letter is fairly clear in asserting that the multi-year surety bond is required by the terms of *the statute*.  There is an appreciable amount of irony in Siemens' argument that the City failed to do all things necessary to preserve the contract by asking for compliance with the statute.

[9]  R. Doc. 69-7 at 2.  Similarly, Siemens says that "it is *obligated* to provide a renewed bond", R. Doc. 81, at page 17 (emphasis supplied), but fails to cite the Court to any provision in the contract that *obligates* Siemens to do that.  Indeed, in the circumstances of this

Siemens' argument does go on to try and cover the inability to renew the bond for subsequent years, and states how it might be able to provide other types of financial assurances in such an event. The problem with all of this is, of course, that Siemens is asking this Court to rewrite the statute to provide for what it has done under the guise of "substantial compliance", and ignores the legislature's requirement under § 14-164-402(15)(D)(iii) that the bond be a *multi-year* bond insuring the *total* of the promised efficiency savings *throughout the term* of the revenue bonds issued to finance the project. Remember here that the legislature used "shall", and the Arkansas Supreme Court has held that means "mandatory compliance", *Klinger,* 293 Ark. at 131. In light of that, we will resist the temptation to write a treatise on all of the good reasons the legislature had for using "shall" in the statute to impose mandatory requirements to have a qualified efficiency contract exempt from its long-standing and jealously guarded rule of competitive bidding when contractors are trying to get business from the cities and counties of our State, but we must note that Siemens "substantial compliance" argument also ignores the interests of the City in the matter to be assured *on the front end* that the total of the promised and guaranteed savings are in fact backed by a multi-year surety bond. The Court is undoubtedly aware that much more could be said on this topic and, consequently, we will cease further comment on this topic.

And it is not like Siemens didn't know from the get-go what it was getting into by working to convince the City to do a performance contract as opposed to bidding the work. Our initial brief goes into detail about the effort made by Siemens to convince the City to do a performance contract exempt from competitive bidding, *see, e.g.,* R. Doc. 70, at page 11, and that will not be repeated

---

matter the City has nothing upon which to require Siemens to renew or even get a bond aside from the statute, which Siemens clearly does not want to follow.

here, but we do believe that it is important to briefly note that Siemens had a strong motive to get

a performance contract exempt from competitive bidding.  Common sense tells you that the price

to be charged under a performance contract is driven by the amount of claimed efficiency savings,

not by the cost to construct and install the improvements.  In other words, the higher they can pump

up the savings on paper, the higher the price they can charge for the job.[10]  That has to be at least one

of the reasons the legislature required that the savings put on paper be "measured and valued", but

we digress.

As stated at the beginning of the preceding paragraph, Siemens *knew* from the beginning

what they had to do in order to get a performance contract.  Exhibit 4 to this Reply is a copy of an

e-mail (just received in discovery) circulated among Siemens executives (including Ardillo) back

in October, 2011,[11] that sets forth the Arkansas performance contracting statute, including the

provisions requiring financial assurances to back up a savings guarantee and  requiring that the

promised savings be measured and valued.[12]  Then there is Exhibit 5 (just received in discovery) to

this Reply which is a March 2013 e-mail issued by Ardillo to Siemens executives that again

circulates the Arkansas performance contracting statute for discussion, including the provisions

about what it takes to have a "qualified efficiency contract" in order to avoid competitive bidding

----

[10]  That is precisely what Siemens thinks.  *See* Exhibit 10 (which is being filed under seal because Siemens has designated this document as being "confidential").

[11]  The same month that Ardillo first appeared before the City's Council and falsely told them that company they were working with was the 4th largest company in the world.  *See* Exhibit 7, and R. Docs. 17-3, 22-1.

[12]   Exhibit 4 is being filed under seal since same is marked "confidential" by Siemens in its discovery disclosure.

of the contract.[13]  That is all long before Siemens sent[14] its form performance contract to the City –

a contract devoid of the financial assurances required by § 14-164-402(15)(D) and which also

directly contradicted the "measure and value" requirement of § 14-164-402(15)(E), all as discussed

in detail in the City's initial brief in support of its MPSJ, R. Doc. 70.  Finally on this point, Exhibit

11 to this Reply reflects that Siemens knew that it needed the investment grade guaranty of its parent

Siemens AG to comply with the financial assurance requirements of the Arkansas performance

contracting statutes.[15]

Yes, Siemens has known all along what it took to avoid competitive bidding of the project,

but it obviously thought that it could get away with leaving out statutorily-required contract terms

when dealing with small town Arkansas and a part-time city attorney.  Siemens obviously wanted

the gravy of a highly priced performance contract, but without the cost of complying with what the

legislature required to have one that is exempt from competitive bidding.  They got greedy, and

when the City wised up (during the process of dealing with defective workmanship) and called their

hand, they want forgiveness from this Court – and they want that forgiveness without having to live

up to the what the legislature required.  Yes, they want the City to have to live with their flagrant

violations of the mandatory provisions of the Arkansas performance contracting statutes from now

on out – and they want this Court to bless same.

It seems important at this juncture to remember that these are the type of folks who told the

---

[13]  This exhibit is being filed under seal since same is marked "confidential" by Siemens in its discovery disclosure.

[14]  By e-mail dated May 20, 2013, which is marked Exhibit 6.

[15]  Exhibit 11 is being filed under seal since same is marked "confidential" by Siemens in its discovery disclosure.

City Council that the Siemens company they were dealing with and going to contract with "is the

4th largest company in the world" – when that simply wasn't true.  Here they provided the City with

a contract form that did not contain statutorily required terms, of which they were well aware, and

they want to keep those millions of dollars they got on the front-end of the contract while this small

town was burying its much loved mayor.[16]  And they want this Court to bless the deal without

making them ever come into compliance with clearly applicable law.  Having one's cake, and eating

it too, comes to mind in this context.

Turning to the cases cited by Siemens, we first note  *Quality Fixtures, Inc. v. Multi-Purpose*

*Facilities Bd. for Pulaski Cty.*, 337 Ark. 115, 986 S.W.2d 865 (Ark. 1999).  First, that case does not

address waiver of a *mandatory* term of a statute governing competitive bidding requirements or

exemptions therefrom.  Second, even if one were to concede that this case has some relevance to the

waiver argument in this context, Siemens has not done what the contractor in *Quality Fixtures* did

– cured its violation before its faulty bid was considered and accepted and a contract made.  Indeed,

in this case Siemens remains in clear violation of the mandatory requirements of the Arkansas

performance contracting statutes that are necessary to have a bid-exempt contract.  And, as Siemens'

response reflects, it doesn't intend to come into compliance with those mandatory statutory

---

[16]  Given the Court's comment in its recent ruling, R. Doc. 87, at page 11, that
"Monticello has paid the company for the work done so far", the City has become concerned that
the Court is operating under the misimpression that the almost $7 Million paid by the City to
Siemens before any significant work had begun under the contract is the value of the new water
meters and installation of same.  That is not the case.  As reflected by Siemens' presentation to
the City Council, the water meter part of the project was stated to be $2.3 Million of the overall
$10 Million project.  R. Doc. 16-2, at page 11.  That means that Siemens has almost $5 Million
of the City's money in its pocket for which no work or material has been provided.

requirements.[17]

Even if one were to consider Siemens' waiver by acceptance argument as one sounding in estoppel, same still would not afford a basis to avoid summary judgment herein.  "Under Arkansas law, four elements must be satisfied to apply the doctrine of estoppel:  (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel had a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."  *Burdine v. Dow Chem. Co.*, 923 F.2d 633, 635 (8th Cir. 1991) (citing *Foote's Dixie Dandy, Inc. v. McHenry*, 270 Ark. 816, 823, 607 S.W.2d 323, 326 (1980).  "A party claiming estoppel must prove that he has relied in good faith on the conduct of the party against whom the estoppel is asserted to his detriment."  *Bethell v. Bethell*, 268 Ark. 409, 424, 597 S.W.2d 576, 584 (1980).

There can be no basis for estoppel here because Siemens and its employees were not ignorant of the true facts - rather, they were conspicuously aware of the requirements of a bid-exempt "qualified efficiency contract" from the beginning to present as has already been demonstrated herein.  We would also remind that the entire contracting process from the beginning through signing  was demonstrably guided by the hands of Siemens.  *See* R. Doc. 70, at page 3, fn. 2, and at page 10, fn. 7 (and supporting exhibits there referenced).  In these circumstances there is also a

---

[17]     *Sirmon v. Roberts*, 209 Ark. 586, 191 S.W.2d 824 (1946), is additionally inapposite to this case, because it addresses the ability of the school teacher, rather than the school board, to waive her rights under the statute. *See, id*., at 590, 191 S.W.2d at 826. *Russell v. Keene*, 239 Ark. 752, 394 S.W.2d 131 (1965), is similarly inapplicable, where the Arkansas Court held that, under Missouri law, a stranger to a contract may not raise the defense of statute of frauds where it has been waived by the parties to the contract. Rather, the Court stated, in dicta, that it "very quickly agree[d] with [the stranger to the contract] that [the party to the contract] could not enforce his agreement against the City . . .". *Id.,* at 754, 394 S.W.2d at 132.

complete absence of good faith coupled with a circumvention of the cost of complying with the requirements of the Arkansas performance contracting statutes.

We would also mention that the primary problem with the failure of the contract to measure and value the promised savings is *not* that same fails to extend for the entire term of the 30-year revenue bonds issued by the City to finance the project, but is the fact that Operational Savings, which constitute over 90% of the contract price, promised by Siemens are stipulated and never measured or verified in accordance with statutory requirements.  The City adamantly disagrees with Siemens's contention that the "Efficiency Contract Law" allows parties to stipulate savings, because stipulated savings run directly afoul of the requirement that Siemens must measure and value the efficiency savings as required by § 14-164-402(15)(E).  Indeed, Siemens wants to measure and verify less than 10% of the efficiency savings promised by the contract, and stipulate to more than 90%  – a far cry from substantial compliance.  This point is covered in detail in the City's initial brief filed herein, R. Doc. 70, at pages 17-18.

The above noted, we cannot fail mention of the fact that Siemens was also present throughout the City's work to finance the project through the issuance of revenue bonds.  This is being noted because Siemens' response makes statements to the effect that the City was acting alone and unilaterally in issuing 30-year revenue bonds.  That is simply not true.  Like a hand in glove (and consistent with his prior shepherding of the whole contracting process) Siemens man Ardillo was with the mayor every step of the revenue bond funding process.  Copies of a few of the e-mails evidencing this are attached as Exhibit 9 to this Reply.  Yes, Siemens was along for the ride in the City's work to get financing of the project.

We are also compelled to note Siemens' arguments being advanced to water down the

statute's clear and plain requirement that the financial assurances backup the ***aggregate***[18] amount

of $12 Million[19] in promised efficiency savings.  Siemens offers up that its one-year bond belatedly

provided constitutes "substantial compliance" with the statute.  That is impossible to understand as

the bond belatedly provided (after multiple demands from the City) is only for $1.2 Million, R. Doc.

69-7, at page 2 – or, in other words, only 1/10th of the ***aggregate*** savings promised.  That is a far

cry from anything resembling "substantial compliance" with what the statute requires.

The Arkansas Supreme Court has said:  "We are unable to agree that there is substantial

compliance when there is no compliance at all."  *Davis v. Jerry*, 245 Ark. 500, 509, 432 S.W.2d 831,

835 (1968).  *See also Daniels v. State*, (139 S.W.3d 140, 143 (Ark. App. 2003) (rejecting the

substantial compliance argument where there no compliance at all with one separate provision of

the statute).  Substantial compliance with *most* of the provisions of the statute is not sufficient;

rather, where substantial compliance is the appropriate test, there must be substantial compliance

with each provision of the statute at issue.

Quite telling in this context is an e-mail (just received in discovery) which is attached as

Exhibit 8.  Since this document was marked "confidential" by Siemens, we will not comment on

same except to say that Siemens clearly understands the difference between "shall" and "may" in

a statute  having a mandatory compliance term relative to financial assurances backing-up promised

efficiency savings in a performance contract.

Before closing, we will briefly mention the other cases cited by Siemens in its response.

There is the one "substantial compliance" case of *Kyzar v. City of W. Memphis*, 360 Ark. 454, 201

---

[18]  Ark. Code Ann. § 14-164-402(15)(D)(iii).

[19]  *See* R. Doc. 69-1, at page 34.

S.W.3d 923 ( 2005), cited – a case having absolutely nothing to do with substantial compliance with the mandatory terms of a statute governing an exemption from competitive bidding.  Then there is the cite to *Minor v. Chase Auto Fin. Corp.,* 2010 Ark. 246, 372 S.W.3d 762 (2010) – a case dealing with waiver and estoppel in a secured transaction between private parties which in no way addresses the fact that those defenses are not available in the context of a mandatory compliance statute governing exemption from competitive bidding, *see* this brief *supra* at page 4.  Then there is the cite to *Turley v. Staley*, 2009 Ark. App. 840, 372 S.W.3d 821 (2009) – a case involving private parties to a real estate transaction where it is stated that equity abhors forfeitures which, again, has no application in the context of a mandatory compliance statute governing an exemption from competitive bidding.  Similarly, there is the cite to *Detroit Fid. & Sur. Co. V. Yaffe Iron & Metal Co.*, 184 Ark. 1095, 44 S.W.2d 1085 (1932), which is a suit between private parties for collection on a surety bond that has no application to a mandatory compliance statute governing an exemption from competitive bidding.  Simply put, when dealing with a municipality and competitive bidding one must turn square corners,  and as stated early in this brief:  "A person contracting with a municipal corporation is charged with notice of its limited powers and must, at his peril, inquire into its powers."  *Duncan Parking Meter Corp. v. City of Gurdon*, 146 F. Supp. 280, 285 (W.D. Ark. 1956).

Finally, as recently found by this Court, R. Doc. 87, at page 11, "Siemens isn't seeking a quantum meruit recovery", and that is born out by the absence of such a claim in its Amended Complaint, R. Doc. 7.  Consequently, Siemens' somewhat lengthy argument about seeking quantum meruit recovery is irrelevant to the present motion as a matter of the pleadings and law of the case.

One final note must be made – if one or more municipal officials can through neglect or

impure motive do or fail to do something that would permit a waiver, etc., that nullifies the plainly

stated mandatory requirements of a directly applicable state statute, then the reality of the matter

would be that the State really doesn't have any control over what they do, and no contractor need

be concerned about the legality of any contract they get a municipality to sign by hook or crook.

It is clear from all that has been said that the Arkansas legislature would be much surprised that such

a result could even be possible given their enactments.

Respectfully submitted,

GIBSON & KEITH, PLLC
Attorneys For City of Monticello
119 South Main Street
Post Office Drawer 447
Monticello, AR   71657
Phone: 870/367-2438
Fax:    870/367-8306

By:     */s/ C. C. Gibson, III*
      C. C. Gibson, III
      Ark. Bar No. 81067
      E-Mail: ccgiii@gibsonandkeith.com

By:     */s/ Lee D. Curry*
      Lee D. Curry
      Ark. Bar No. 2014153
      E-Mail: ldc@gibsonandkeith.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to all counsel of record in this case.

*/s/ C. C. Gibson, III*
C. C. Gibson, III